[Crim. No. 9730. First Dist., Div. Three. Jan. 6, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDERSON BEY BOYD, Defendant and Appellant.

## Counsel

Benjamin F. Marlowe for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BROWN (H. C.), J.**—The issue on this appeal is whether the second trial of appellant constituted double jeopardy under the California Constitutional prohibition when the first trial was terminated prior to a verdict by a *sua sponte* order of the trial court.

California Constitution, article I, section 13, declares that "No person shall be twice put in jeopardy for the same offense; . . ." ■ It is settled that (1) jeopardy attaches when a defendant is placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly

impaneled and sworn, and (2) a discharge of that jury without a verdict bars a retrial unless the defendant *consented thereto or legal necessity required it.* (*Curry* v. *Superior Court,* 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345]; *People* v. *Compton,* 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537].) (Italics added.)

█ Here it is clear that jeopardy had attached. There was a valid accusation. The jury had been chosen. The trial was in its third day when defense counsel informed the trial judge that one of his witnesses had been arrested during the noon hour by San Francisco police officers. The arrest occurred just outside the courtroom in which defendant was being tried at a time when the jury was leaving on its noon recess. Appellant's counsel complained to the court that the facts of the arrest would practically nullify the witness' value and that also it would adversely reflect on the defendant Boyd. Both defendant and his counsel, while directing the court's attention to the possible prejudicial conduct of the police officers, refused to move for or consent to a mistrial. The trial judge, on his own motion, thereupon declared a mistrial. The matter was thereafter set for retrial before a jury. The resulting conviction after the second trial of defendant is now questioned on this appeal by the claim of double jeopardy.

█ In *Cardenas* v. *Superior Court,* 56 Cal.2d 273, 276 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371], the court said: ". . . Once the jury is charged with the defendant's deliverance '[h]is jeopardy is real and he cannot be again subjected to jeopardy unless the jury be discharged without rendering a verdict, *by his consent,* or *upon some legal necessity* resulting from physical causes *beyond the control of the court.*' (Emphasis added.)"

Since under the facts stated jeopardy had attached, the issues now presented are (1) whether there was a "consent" to the mistrial, or (2) whether there was "legal necessity" for the order.

█ In *People* v. *Compton, supra,* 6 Cal.3d 55, 62, the court quoted from *Curry* v. *Superior Court, supra,* 2 Cal.3d 707, as follows: " '[A]ffirmative conduct by the defendant may constitute a waiver [of the claim of jeopardy] if it clearly evidences consent [citations], and such a waiver will a fortiori be implied when the defendant actually initiates or joins in a motion for mistrial [citation]. . . .' "

"The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto transform counsel's expression of concern into an implied consent to such drastic ruling. . . ."

It is manifest that under *Compton* consent may not be implied solely from defense counsel's initiation of the inquiry and assertion of prejudice. The refusal of both appellant and his counsel to move for the mistrial, or to consent thereto, negates any possible inference of *consent* and we so conclude.

 The People also contend that there was *legal necessity* for the trial court to declare a mistrial in order to insure that the defendant would have a fair trial and to assure economy of judicial time and effort. The Supreme Court in *Curry* stated that "legal necessity" for the granting of a mistrial has been limited by court decision. To illustrate the limitation, the court offered the following examples: "In California, legal necessity for a mistrial typically arises from an inability of the jury to agree (Pen. Code, § 1140; *Paulson* v. *Superior Court* (1962) *supra*, 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]) *or from physical causes beyond the control of the court* (Pen. Code, § 1141; *Cardenas* v. *Superior Court* (1961) *supra*, 56 Cal.2d 273, 276), such as the death, illness, or absence of judge or juror (Pen. Code, §§ 1123, 1147; *People* v. *Ross* (1890) 85 Cal. 383 [24 P. 789]; *People* v. *Hess* (1951) 107 Cal.App.2d 407, 425-426 [237 P.2d 568]) or of the defendant (Pen. Code, § 1043; *People* v. *Higgins* (1881) 59 Cal. 357, 358)." (Italics added.)

The Supreme Court in *Cardenas* also required legal necessity to be from " 'physical causes *beyond the control of the court.*' " (P. 276.)

 The People argue that the court had no control over the observation of jurors outside the courtroom nor did the court have control over the actions of the police in arresting a defense witness within the jurors' view. The People claim that this prejudicial incident is one *occurring outside the control of the trial judge* and is distinguishable from mere procedural error or error of law which latter type of error normally would not justify a *sua sponte direction* for a mistrial. (See *Cardenas* v. *Superior Court, supra,* 56 Cal.2d 273.)

Here it was not established that the incident complained of by defendant was so prejudicial as to warrant a *sua sponte* order of mistrial. The record does not show that the jurors were made aware of the arrest, or the reason for it; that the arrest would have influenced their verdict; or that the desired evidence sought to be produced could not still be established by the witness or by other evidence or witnesses. With such a paucity of information, the trial court could not give informed consideration to whether or not appropriate instructions might cure the possibility of prejudice. We believe that the effect of the incident on the jury and on the ultimate outcome of the case should have been explored and the conclusion

of prejudice should appear in the record as a demonstrable reality. (See *People* v. *Compton, supra,* 6 Cal.3d 55, 59-61.) Here the determination that the incident was prejudicial was based upon speculation and conjecture.

The defendant was, of course, entitled to a trial before an unprejudiced jury. He was offered that new trial and refused it. This refusal, despite counsel's protestations to the contrary, could be viewed as tantamount to a concession by defendant and his counsel that the police actions were not prejudicial.

In *Cardenas* v. *Superior Court, supra,* 56 Cal.2d 273, 276, the court stated that a defendant's action in withdrawing a motion for a mistrial would amount to a waiver of any claim of prejudice from the incident thereafter, either on appeal or motion for new trial or otherwise.

After the trial judge indicated he would grant the mistrial upon motion or if consented to by defendant, the decision as to extent of the prejudice was for defendant and his counsel.

In *Curry* v. *Superior Court, supra,* 2 Cal.3d 707, 717, the court said: "A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare."

The record failed to reveal facts of prejudice warranting the drastic action of mistrial. The refusal of the defendant to move for, or consent to, a mistrial indicated the defendant's decision to proceed with the trial to a verdict. Such a decision, as in *Cardenas,* would preclude the claim of prejudice on appeal.

We have concluded that jeopardy attached to defendant in his first trial. There was no showing of legal necessity or consent under the evi-

dence for the granting of a mistrial *sua sponte*. The defendant, by being tried a second time, was placed in double jeopardy within the constitutional definition.

The judgment is reversed.

Draper, P. J., and Caldecott, J., concurred.