[Crim. No. 10114. First Dist., Div. Three. Aug. 8, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN A. DAVIS, Defendant and Appellant.

## Counsel

Richard J. Kula, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BROWN (H. C.), J.**—This is an appeal from a judgment of conviction following a trial by jury which found appellant guilty of violations of Health and Safety Code section 11915 (possession of paraphernalia used for injecting a dangerous drug); Business and Professions Code section 4143 (possession of hypodermic needle); Penal Code section 12021 (felon possessing a firearm capable of being concealed); and Penal Code section 12025 (carrying a concealed weapon without a license).

We have concluded that appellant's contention that his defense of not guilty by reason of double jeopardy is meritorious and that conclusion makes it unnecessary to consider other issues.

After a jury of 12 had been selected and sworn, the trial judge announced his decision to call one alternate juror. There was one prospective juror left who was challenged by the prosecution. A new jury panel was sent for and just as the sworn jury was about to leave the courtroom, the following colloquy between the judge and a juror took place: "Oh, excuse me, there is one matter I overlooked. I'm sorry, Mr. Goff [one of the jurors], you had a question or two. You stated the questions asked other jurors have raised a question in your mind. I think even though you are sworn in, I still think we ought to give you the opportunity to say what it was. I'm sorry, I forgot that completely. JUROR GOFF: Well, it was during Mr. Towne's statement I found that I didn't state something that

I felt that I should have at the time, or I agreed with him. I have some prejudice against narcotic laws as presently written. I don't know, I don't think this would influence my ability to be impartial in the case in terms of the evidence presented and in terms of the law as it stands. THE COURT: It is not the function of either the jury or the Judge or any of us here to pass on the merits or demerits of the law. The law is on the books, and we are to enforce it. JUROR GOFF: Right. THE COURT: Now, do you feel you will be able to follow the instructions of the Court and carry out the law and apply the law to the facts as you find them? JUROR GOFF: I think so. THE COURT: As I stated before, I think most people realize that, from my understanding, there is about 6,000 laws in the hopper in Sacramento for one session of the Legislature, so there are lots of laws that are up for change. And this happens in every session of the Assembly and every session of the Congress. And, certainly, there is a lot of discussion of narcotic laws, but we are to enforce the law as we find it. Now, do you feel you will have any difficulty in doing that? JUROR GOFF: It was only the original statement of the description of the facts. My wife takes from time to time a drug that has legally been described as being highly restrictive and dangerous. And the fact that I, myself, am not naive, I have seen her take this drug and I know the effects of it, at least on one person. THE COURT: Well, we have gone into that. I think counsel is satisfied. But, on this other, your feeling about the law, I think that if counsel has any questions they want to ask him about that, we can open the matter up again."

The district attorney moved for a mistrial. The court dismissed the jury stating: "Counsel cannot agree on what we should do about this, so the only—We have no alternative but to declare a mistrial and start picking the jury all over again. So that the 12 of you are excused and will have to report back to the jury room."

Contrary to the opinion of the court, there was a procedure available to meet this situation. Penal Code section 1089 allows the court in its discretion to direct the calling of one or more additional jurors immediately after the jury is impaneled and sworn. If at any time, a juror becomes unable to perform his duties, the court may excuse him and substitute one of the alternate jurors. In two reported cases, reviewing courts have upheld the action of the lower court when a juror was discharged *before* the alternates were sworn. In *People v. Burns,* 84 Cal.App.2d 18 [189 P.2d 868], a juror was excused when he revealed, after being sworn, that a criminal charge was pending against him. The defendants argued that they faced two juries and that jeopardy attached as soon as the original 12 jurors were sworn. The Attorney General cites this case for the propo-

sition that jeopardy does not attach until the entire jury selection process is finished, including the selection and swearing of alternate jurors. This was the decision of the court but the decision must be viewed in the context of the action taken by the trial court for the reviewing court explained: "If the substitution of the alternate for one of the regular jurors is in accordance with the provisions of Penal Code section 1089 no question of double jeopardy would arise. This can only be true if the substitution of the alternate for the regular juror does not destroy the unity of the jury. It does not destroy the unity of the jury because the jury is not complete until the alternate is accepted and sworn and the alternate is at all times a potential member of the regular jury." (P. 32.)

In *People* v. *Hess,* 107 Cal.App.2d 407 [237 P.2d 568], a juror was excused after being sworn because of her precarious health. Only after excusing this juror, did the trial court proceed to order alternates chosen and to substitute one of the alternates for the discharged juror. This procedure was approved by the reviewing court.

When the court proceeds to substitute an alternate juror in accordance with the procedure set forth in Penal Code section 1089, no question of double jeopardy would arise. (*People* v. *Hess,* 104 Cal.App.2d 642, 680-681 [234 P.2d 65].) In *People* v. *Burns, supra,* 84 Cal.App.2d 18, and *People* v. *Hess, supra,* 107 Cal.App.2d 407, the holding that jeopardy does not attach until the alternates are sworn should be limited to a holding that substantial compliance with Penal Code section 1089 precludes the later raising of an argument of former jeopardy.

■ The court, in the instant case, did not proceed to excuse Juror Goff and substitute an alternate in his place. ■ When the procedures of Penal Code section 1089 are not followed and alternate jurors chosen, jeopardy attaches after the swearing of the original jury. (See *Jackson* v. *Superior Court,* 10 Cal.2d 350, 356 [74 P.2d 243, 113 A.L.R. 1422].) An unwarranted discharge of the jury thereafter gives rise to the defense of former jeopardy and a discharge is unwarranted unless the defendant consented thereto or legal necessity required it. (*Curry* v. *Superior Court,* 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345]; see 1 Witkin, Cal. Crimes (1963) p. 183.)

The fact that a juror is unable to perform his duty is a ground for discharge of the jury under the doctrine of strict legal necessity. (Pen. Code, § 1123; *People* v. *Ross,* 85 Cal. 383 [24 P. 789].) ■ "A juror's admission that by reason of the nature of the case it would be difficult for him to keep an open mind constitutes a basis for his disqualification upon a challenge for actual bias. (Pen. Code, § 1073; *People* v. *Harrison* (1910)

13 Cal.App. 555 [110 P. 345].) In turn, belated discovery of such a ground for disqualification while the trial is in progress may amount to good cause for the court to order the juror's discharge, provided it actually renders him 'unable to perform his duty.' (Pen. Code, §§ 1089, 1123; *People* v. *Green* (1956) 47 Cal.2d 209, 215-216 [302 P.2d 307]; *People* v. *Abbott* (1956) 47 Cal.2d 362, 370-371 [303 P.2d 730]; *People* v. *Taylor* (1961) 189 Cal.App.2d 490, 494-495 [11 Cal.Rptr. 480]; *In re Devlin* (1956) 139 Cal.App.2d 810 [294 P.2d 466].)" (*People* v. *Compton,* 6 Cal.3d 55, 59 [98 Cal.Rptr. 217, 490 P.2d 537].) In *Compton,* it had been reported to the trial court that an alternate juror had made an equivocal statement that he might have difficulty keeping an open mind. The Supreme Court held that the trial court erred in discharging the jury pointing out that the remarks of the juror could have meant "only that he found the facts of the case distasteful and would be compelled to make a special effort to remain objective, although he was capable of doing so." (*Compton,* p. 60.) ▮ The examination of Goff in the case at hand indicated no more than this. Goff stated that he had a general prejudice against the present drug laws. When the judge stated that the juror's duty was not to judge the law but to enforce it, and asked Goff if he would be able to follow instructions, Goff answered that in his opinion he would be able to do so. ▮ ". . . [A] general abstract bias which a juror may entertain to a class of litigation will not of itself disqualify him from trying a cause, when it appears that, notwithstanding he entertains that feeling, he can set it aside, and can and will fairly and impartially decide the particular case solely upon the evidence and the instructions of the court. [Citations.]" (*Fitts* v. *Southern Pacific Co.,* 149 Cal. 310, 312-313 [86 P. 710]; see Witkin, Cal. Criminal Procedure (1963) § 402, pp. 402-403.) Goff did not demonstrate partiality on his part which would be sufficient to excuse him for cause or prevent him from performing his duty.

The Attorney General has cited several cases in which the trial court's decision to discharge a juror and substitute an alternate under the procedures set forth in Penal Code section 1089 have been upheld, some of them despite an assertion by the juror that he could act with impartiality (e.g., *People* v. *Abbott,* 47 Cal.2d 362, 371 [303 P.2d 730]) or thought he could (e.g., *People* v. *Green,* 47 Cal.2d 209, 216 [302 P.2d 307]). He also cites cases under Penal Code section 1089 where the reviewing courts have held that good cause for the discharge of a juror rests in the discretion of the trial court. (E.g., *People* v. *Taylor,* 189 Cal.App.2d 490, 495 [11 Cal.Rptr. 480].) It is noted, however, that case law has imposed the stringent test of "legal necessity" upon the discharge of the jury and not upon the substitution of an alternate.

It is concluded, therefore, that when the jury was dismissed after having been sworn, jeopardy had attached and since there was no legal necessity for the discharge of the jury, retrial was not constitutionally permissible. (U. S. Const., Amend. V; Cal. Const., art. I, § 13.)

The judgment is reversed.

Draper, P. J., and Caldecott, J., concurred.