[L.A. No. 30964. May 24, 1979.]

ARMANDO YSIDORO LARIOS, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard E. Erwin, Public Defender, Kenneth Cleaver, Assistant Public Defender, Ronald E. Balle and Kelton Lee Gibson, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

C. Stanley Trom, District Attorney, Raymond J, Sinetar, Chief Deputy District Attorney, and Jay M. Johnson, Jr., Deputy District Attorney, for Real Party in Interest.

## OPINION

**BIRD, C. J.**—Petitioner, Armando Larios, seeks a writ of prohibition to prevent further criminal proceedings against him. This court must determine whether a retrial of this case would violate a person's right not to be placed twice in jeopardy.

I

Petitioner was charged with the robbery of a dairy store in which $250 was taken. A jury was impaneled and sworn without alternates. Petitioner testified in his own defense that he was not in the dairy store on May 13, the day of the robbery. He testified that on that morning, he had gone with a cousin to Two Guys Department Store to buy some blue jeans which were advertised on sale. The store was closed when they arrived, however, and they started to walk home. Shortly thereafter, they were arrested by Oxnard police in connection with the robbery.

On rebuttal, Police Officer Elliott testified that he was told by petitioner after his arrest that while at Two Guys that morning, petitioner had seen posters advertising the sale on the store's windows. Officer Elliott testified that later that day, he went to Two Guys and could find no such posters. Following this testimony, the jury was instructed and began its deliberations.

During deliberations, a juror passed the trial judge a note asking if it were possible to consider information which was not submitted at trial. On defense counsel's motion, the court summoned the jury and asked

whether any of them had conducted an independent investigation. Juror Freear said he had done so. The court then held a brief hearing on the matter outside the presence of the other jurors.

Freear testified that he was employed by the Ventura Star-Press, a newspaper which carried advertising for the Two Guys Department Store. During a trial recess, Freear had gone back through his newspaper files. He found advertising inserts indicating that although Two Guys had had a Levis sale beginning on May 10, there was no sale on May 13, the morning of the robbery. Freear indicated his belief that this information corroborated Officer Elliott's testimony that on the afternoon of the robbery there were no posters advertising a blue jean sale at Two Guys.

Freear made clear that no one else on the jury was aware of the information he had obtained. However, Freear himself believed that the information would affect his ability to judge the case fairly since he "would be inclined" to determine the credibility of the witnesses based on what he had observed in the newspapers. He also stated, "I don't think it would be fair to Mr. Larios if I would use that or use that to influence the rest of the jury."

Because there were no alternate jurors available, the trial court asked defense counsel if he would stipulate to an 11-person jury. Counsel declined. Without seeking defendant's consent, the judge then declared a mistrial, finding good cause to discharge Freear and the entire jury pursuant to Penal Code sections 1120 and 1123.[1]

Petitioner then entered a plea of once in jeopardy and moved to dismiss. His motion was denied and the case was set for retrial. This petition for a writ of prohibition followed.

---

[1]Penal Code section 1120: "If a juror has any personal knowledge respecting a fact in controversy in a cause, he must declare the same in open court during the trial. If, during the retirement of the jury, a juror declare a fact which could be evidence in the cause, as of his own knowledge, the jury must return into court. In either of these cases, the juror making the statement must be sworn as a witness and examined in the presence of the parties in order that the court may determine whether good cause exists for his discharge as a juror."

Penal Code section 1123 provides in pertinent part: "If before the jury has returned its verdict into court, a juror becomes sick or upon other good cause shown to the court is found to be unable to perform his duty, the court may order him to be discharged. If . . . there be no alternate juror [and] a juror becomes sick or otherwise unable to perform his duty and has been discharged by the court as provided herein, the jury shall be discharged and a new jury then or afterwards impaneled, and the cause may be again tried."

Hereinafter, all statutory references are to the Penal Code.

## II

The question to be resolved is may petitioner be retried following the trial court's declaration of a mistrial if petitioner did not consent to it. ■ Prohibition is a proper remedy to prevent further proceedings against a defendant who has once been placed in jeopardy. (E.g., *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [19 Cal.Rptr. 302, 531 P.2d 1086].)

■ Article I, section 15 of the California Constitution provides that "[p]ersons may not twice be put in jeopardy for the same offense." (See also § 1023.)[2] Under this command, once a criminal defendant is placed on trial and the jury is duly impaneled and sworn, a discharge of the jury without a verdict is equivalent to an acquittal and bars retrial unless (1) the defendant consents to the discharge or (2) legal necessity requires it. (E.g., *People* v. *Rojas* (1975) 15 Cal.3d 540, 545 [125 Cal.Rptr. 357, 542 P.2d 229]; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 712-713 [87 Cal.Rptr. 361, 470 P.2d 345].)

The right not to be placed twice in jeopardy for the same offense is as sacred as the right to trial by jury. (*Gonzales* v. *Municipal Court* (1973) 32 Cal.App.3d 706, 714 [108 Cal.Rptr. 612].) "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119].) Without the guarantee against double jeopardy, the chances of convicting innocent persons would be increased, both because the state would have unlimited opportunities to prosecute an acquitted defendant and because the exposure of the accused's defense in the first trial would provide the state with a major advantage in preparing for the second. (See generally Schulhofer, *Jeopardy and Mistrials* (1977) 125 U.Pa.L.Rev. 449, 508-511.

[2]"When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

In the present case, real party does not dispute that the jury was discharged after jeopardy attached and without petitioner's consent. The sole issue is whether the trial court's basis for declaring a mistrial falls within "the limited instances of 'legal necessity.'" (*Curry* v. *Superior Court, supra,* 2 Cal.3d at p. 717.)

In *Curry,* this court declared that legal necessity arises (1) from an inability of the jury to agree or (2) from physical causes beyond the control of the court, such as death, illness, or absence of a judge or juror. (*Id.,* at pp. 713-714.) *Curry* held that mere errors of law or procedure, such as the arguably erroneous evidentiary rulings at issue there, did not constitute legal necessity. (*Id.,* at p. 714; accord *People* v. *Upshaw* (1974) 13 Cal.3d 29, 33 [117 Cal.Rptr. 668, 528 P.2d 756].) The court reasoned that since the jury was *not actually precluded* from rendering a verdict, the decision as to whether to continue the trial was constitutionally reserved for the person in jeopardy: "A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. . . . Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety [involved in being prosecuted]. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of paternalistic concern for his welfare." (*Curry, supra,* at p. 717.)

In *People* v. *Compton* (1971) 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537], this court extended *Curry* into the area of juror bias. In *Compton,* it was discovered after one day of trial that an alternate juror had told an outsider that "'he didn't like to be on a case like this because it was hard to keep an open mind.'" (6 Cal.3d at p. 59.) The trial court discharged the alternate and declared a mistrial on its own motion "'out of an abundance of caution and in fairness to the defendant.'" (*Id.,* at p. 60.) This court held that there was no "legal necessity" within the meaning of *Curry* to discharge the entire jury without the defendant's consent. (*Id.,* at p. 59.)

The *Compton* court also ruled that the trial court had erred in discharging the alternate juror. The court reasoned that even if the alternate had been one of the original jurors, his out-of-court statement was too equivocal to justify his dismissal, since the statement left open the

possibility that he could act impartially despite his distaste for the facts of the case. (*Id.,* at pp. 59-60.)

In the present case, the statements of the juror in question were not equivocal. Freear testified that he would be inclined to resolve credibility questions based on his independent investigation. He also indicated that his investigation would affect his ability to judge the case fairly. Thus, if appellant had objected to Freear's remaining on the jury, or if an alternate juror had been available, the judge could have properly dismissed Freear from the jury.

However, since petitioner did not object to Freear's remaining and since there were no alternate jurors, this court must decide if legal necessity compelled a mistrial. Despite Freear's actions, a 12-person jury was present and available to render a verdict. The record establishes that the remainder of the jury was unaware of the nature of Freear's investigation. Freear himself appreciated that it would be unfair to reveal his findings to his fellow jurors. Under these circumstances, there was no legal necessity within the meaning of *Curry* and *Compton* to deprive petitioner of his constitutionally protected freedom to choose to proceed with this jury. Once petitioner became aware of the misconduct and the judge's willingness to declare a mistrial, "the decision as to extent of the prejudice was for [petitioner] and his counsel." (*People* v. *Boyd* (1972) 22 Cal.App.3d 714, 719 [99 Cal.Rptr. 553].)

Petitioner may have had numerous reasons for wanting to complete the trial despite the apparent prejudice of one juror. Petitioner may have felt that Freear was aware of his obligation to disregard the information he had obtained and that the error could be cured by an appropriate instruction. Petitioner may have believed that the remainder of the jury was untainted and his prospects for acquittal were as good or better with his original jury than in a new trial where the prosecution would be better prepared for petitioner's totally revealed defense. Since petitioner had been unable to raise bail, he may have been unwilling to spend another three months or more in county jail awaiting a new jury's verdict on whether he was guilty. Further, petitioner may simply have wished not to repeat the expense, embarrassment and ordeal of a new trial. As *Curry* makes clear, "[t]hese considerations are peculiarly within the knowledge of the defendant, not the judge . . . ." (2 Cal.3d at p. 717.)

Under *Curry,* even "palpably prejudicial errors" in evidentiary rulings do not give rise to legal necessity for declaring a mistrial without the-

defendant's consent. (See *ibid.*) There is no reason why palpably prejudicial errors consisting of a juror's misconduct should have a different effect. Indeed, *Curry* guarantees an accused the freedom to choose to proceed with his original jury, even though all its members have been exposed to prejudical error. It would be anomalous to deny petitioner that same freedom of choice where the error involved only one juror.

■    In order to safeguard petitioner's constitutionally protected freedom of choice once petitioner refused to stipulate to an 11-person jury, the trial court could have inquired if petitioner consented to a mistrial. Such consent, of course, would remove any bar to retrial. (E.g., *Cardenas v. Superior Court* (1961) 56 Cal.2d 273, 276 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; *People v. Franklin* (1976) 56 Cal.App.3d 18, 23 [128 Cal.Rptr. 94].) If petitioner refused to consent, that refusal would signify his waiver of any postconviction claim of prejudice based on Freear's misconduct. Once squarely presented with the choice, a defendant is not entitled to proceed to a verdict without risk in a case where the error is not caused by either the judge or the prosecutor. (Compare *Curry v. Superior Court, supra,* 2 Cal.3d at p. 714.)

■    Penal Code section 1123 authorizes a mistrial where a juror is unable to perform his duty because of illness or "other good cause" and where no alternate is available. The words "other good cause" must have been meant to cover situations such as the inability of a healthy juror to serve due to some emergency. Under these circumstances, if there were no alternate juror, a 12-person jury would be unavailable and legal necessity for a mistrial would exist. (See *Curry v. Superior Court, supra,* 2 Cal.3d at pp. 713-714.)

A juror's misconduct has a different effect. Absent a valid objection to the juror's continuing to serve, a full jury remains. The fact that a juror's actions or beliefs would provide "good cause" for his replacement if an alternate were available does not mean that there is "legal necessity" for a mistrial where no alternate is available. (See *People v. Davis* (1972) 27 Cal.App.3d 115, 120 [103 Cal.Rptr. 494].)

■    Section 1123 makes no mention of the critical term "legal necessity," which is constitutionally required before a jury may be discharged without the consent of the accused. (*People v. Compton, supra,* 6 Cal.3d at p. 59; *Curry v. Superior Court, supra,* 2 Cal.3d at p. 712.)

Since a statute may not override a constitutional requirement, section 1123 must be read to authorize mistrials only where there is consent or where "good cause" amounts to "legal necessity."

██ Real party relies on *In re Devlin* (1956) 139 Cal.App.2d 810 [294 P.2d 466] for the proposition that a juror's professed inability to act impartially constitutes "good cause" to discharge the entire jury without defendant's consent under section 1123. However, *Devlin* does not consider the constitutional requirement of "legal necessity." To the extent that *Devlin* suggests that "good cause" alone is sufficient to warrant a mistrial, it is disapproved.[3]

Petitioner's jury was dismissed without his consent and without legal necessity after jeopardy attached. The constitutional guarantee against double jeopardy bars a second trial. Let a peremptory writ of prohibition issue as prayed.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.,** Concurring.—Were this a matter of first impression, we should hold defendant's failure to object constitutes consent to the declaration of a mistrial, estopping him from now entering a plea of once in jeopardy.

The purpose of the constitutional provision against double jeopardy is to prevent harassment of a defendant by repeated trials on the same criminal charge. (*People* v. *Upshaw* (1974) 13 Cal.3d 29, 34 [117 Cal.Rptr. 668, 528 P.2d 756].) That purpose is not served by barring further trial in this case, for there is not the slightest hint of intent to harass here. To the contrary, it is absolutely clear that the mistrial was declared solely to protect defendant's constitutional right to an unbiased jury. Because the action was taken for defendant's benefit, his silence may reasonably be understood as acquiescence. To permit defendant to assert the bar of

[3]In addition, the *Devlin* opinion misstates the law in asserting that "a juror may be discharged, *without jeopardy attaching,* if 'good cause' for the discharge exists." (*Id.,* at p. 813, italics added.) In a jury trial, jeopardy attaches when a defendant is placed on trial on a valid accusatory pleading and the jury is impaneled and sworn. (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 601.) Thereafter, the proper discharge of the jury does not mean that jeopardy never attached. Rather, it means that "legal necessity" removed the bar to retrial, even though jeopardy *had* once attached.

former jeopardy in these circumstances elevates form over sense, frustrating substantial justice. This court has before held defendant's failure to object does not constitute consent to declaration of mistrial. (See *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345]; *People* v. *Compton* (1971) 6 Cal.3d 55, 63 [98 Cal.Rptr. 217, 490 P.2d 537]; see also *People* v. *Valenti* (1957) 49 Cal.2d 199, 202, 208-209 [316 P.2d 633].) In deference to the doctrine of stare decisis, I reluctantly concur in today's judgment.