[EDITORS' NOTE: REVIEW DENIED AND OPINION ORDERED DEPUBLISHED, OCTOBER 22, 2003, BY THE CALIFORNIA SUPREME COURT; PURSUANT TO RULES 976, 976.1 and 979 OF THE CALIFORNIA RULES OF COURT, THIS OPINION IS NOT CERTIFIED FOR PUBLICATION. THE SHADED TEXT BELOW REPRESENTS THE ORIGINAL OPINION AND IS PROVIDED FOR REFERENCE PURPOSES ONLY.]
Petitioner Amar Naim Evans was charged with multiple counts involving two robberies. During his trial the court became aware that a juror had failed to fully disclose her potential bias against the prosecution. After questioning the juror and determining that the juror could not fairly determine petitioner's guilt or innocence, the trial court dismissed the juror. Because both alternates had been excused, and because the parties were unwilling to proceed without a jury of 12, the trial court then declared a mistrial. Petitioner asserts the double jeopardy provisions of the state and federal Constitutions bar any retrial. We agree and grant his petition.
 FACTS
On July 13, 2000, petitioner was charged with multiple counts involving the robbery of two restaurants. Petitioner was subsequently arraigned on an eight-count information charging five counts of robbery with allegations of firearm use, one count of attempted robbery with an allegation of firearms use and three counts of false imprisonment. Petitioner was the alleged getaway driver.
During jury voir dire, the trial court asked the jurors if any of them had negative experiences with law enforcement that would affect their judgment. Juror No. 12 did not disclose any negative experiences. *Page 1349 
Petitioner's trial began with a jury of 12 and two alternates. During trial two of the jurors were excused due to medical conditions which made their continued participation impossible and they were replaced with the two alternates. Shortly after deliberations began, juror No. 3 passed a note to the bailiff asking the court a question concerning juror No. 12's ability to remain impartial. The juror expressed concern that during deliberations juror No. 12 stated that 35 years earlier she had been an innocent suspect in a situation which closely paralleled the facts in petitioner's case.
After receiving the note from juror No. 3, the trial court questioned juror No. 12 individually. Juror No. 12 maintained she had forgotten about her contact with law enforcement during voir dire but could remain fair and impartial in spite of her past experience.
Over the objection of both parties, the trial court excused juror No. 12 on its own motion. The trial court found the juror was not credible when she said she could remain impartial and unbiased. The trial court did not believe the juror's claim she had forgotten the incident during voir dire. Both parties refused to stipulate to an 11-member jury and the trial court declared a mistrial.
Petitioner moved to dismiss the complaint on the grounds he had been placed in jeopardy and there was no legal necessity to support the discharge of the empanelled jury. The trial court denied the motion and petitioner filed a petition for a writ of mandate. We issued an order to show cause and a stay.
 DISCUSSION
1. Issue[1]
Petitioner contends there was no legal necessity to discharge the empanelled jury. Thus he contends any retrial will violate the double-jeopardy provisions of the state and federal Constitutions. We agree.
2. Law
"[A] discharge of the entire jury without a verdict is equivalent to an acquittal and bars a retrial unless defendant consented to it, or legal necessity required it." (People v. Hernandez (2003) 30 Cal.4th 1, 5; see also Curry v. Superior Court (1970) 2 Cal.3d 707, 717-718 (Curry).) "In California, legal *Page 1350 
necessity for a mistrial typically arises from an inability of the jury to agree [citations] or from physical causes beyond the control of the court [citations], such as death, illness, or the absence of judge or juror [citations] or of the defendant [citations]. A mere error of law or procedure, however, does not constitute legal necessity." (Curry, supra, 2 Cal.3d at pp. 713-714.) As the Curry court noted: "[E]ven when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice." (Id. at p. 717.)
The court applied these principles in Larios v. Superior Court (1979)24 Cal.3d 324, 328 (Larios). In Larios, after all the available alternates had been seated, a juror conducted outside research that refuted the defendant's alibi. The juror conceded that the information would affect his ability to decide the case fairly. (Ibid.) The defendant refused to agree to proceed with an 11-member jury. (Ibid.) The court declared a mistrial, finding good cause to discharge the juror. (Ibid.) Defendant changed his plea to once in jeopardy and moved to dismiss. (Ibid.) When the motion was denied, he petitioned for a writ of prohibition. (Ibid.)
The Supreme Court issued the writ as prayed. (Larios, supra,24 Cal.3d at p. 333.) The court stated: "Under these circumstances, there was no legal necessity within the meaning of Curry and Compton to deprive petitioner of his constitutionally protected freedom to choose to proceed with this jury. Once petitioner became aware of the misconduct and the judge's willingness to declare a mistrial, `the decision as to extent of the prejudice was for [petitioner] and his counsel.'" (Larios, supra,24 Cal.3d at p. 328; People v. Boyd (1972) 22 Cal.App.3d 714, 719; see alsoCurry, supra 2 Cal.3d at pp. 713-714; People v. Compton (1971) 6 Cal.3d 55,59.) The court found that when juror misconduct occurs, "[a]bsent a valid objection to the juror's continuing to serve, a full jury remains. The fact that a juror's actions or beliefs could provide `good cause' for his replacement if an alternate were available does not mean there is `legal necessity' for a mistrial where no alternate is available." (Larios,supra, 24 Cal.3d at p. 332; see also People v. Davis (1972)27 Cal.App.3d 115, 120.)
It merits noting that in considering these principles, the court inMitchell v. Superior Court (1984) 155 Cal.App.3d 624, 629-630
(Mitchell), was careful to recognize that a juror's inability to perform his duties is a factual matter to be determined by the trial court. InMitchell a *Page 1351 
juror sent the judge a note stating that because of remarks made by a prospective juror during jury selection, he was unable to concentrate on the evidence. The juror's note stated: "`Sitting in the panel I found my mind wandering, thinking about the remarks made. I was unable to take notes or listen to what was being said.'" (Id. at p. 626.) After discussing the matter with the juror, the trial court found the juror was not able to adequately concentrate and also that he had prejudged the defendant's guilt or innocence. The trial court excused the juror and because the defendant was unwilling to stipulate to trial with the remaining 11 jurors, declared a mistrial. In finding that double jeopardy did not bar a new trial, the court in Mitchell stated: "[T]he present case is one where, upon good cause, the trial court found the juror factually unable to perform — as distinguished from merely declaring legal disqualification — based upon uncontradicted facts. The trial court made specific findings repeating that he found the juror to be unable [to perform]. The fact that the juror entertained or expressed some prejudicial attitude is not a legal basis for discharge. [Citation.] . . . [¶] . . . [¶] [W]e are not concerned with whether certain other facts or events may or may not be good cause to discharge a juror. We here test only the fact finding determination by the trial court of the statutory condition of inability. The trial court expressly made such a finding. That finding is supported by substantial evidence." (Mitchell, supra, 155 Cal.App.3d at p. 629.)
3. Analysis
As in Larios, here no legal necessity forced the trial court to declare a mistrial. Unlike the situation in Mitchell, no juror suffered from an inability to serve and there was no showing that the jury was unable to agree. Indeed, we note the People have not claimed and the trial court made no finding that juror No. 12 suffered from a physical or mental disability which prevented her from serving. Rather, the court concluded the juror would be biased. While the court's determination of bias might support removal during voir dire, once the alternates were exhausted during trial, the trial court's unilateral determination of bias is not a proper basis for removing a juror and a trial judge acts at his or her peril in doing so. (See Larios, supra, 24 Cal.3d at p. 332.) If the defendant wishes to proceed with the biased juror, he or she is entitled to do so. (Ibid.)
The People nonetheless maintain Larios does not apply because inLarios the juror's bias favored the prosecution, whereas here the juror's bias favored the defense. This is a distinction without a difference under either federal or California law. In Gori v. United States (1961)367 U.S. 364, 369-370, the court held that granting a mistrial in order to protect a defendant from prejudice does not as a matter of law place the defendant in jeopardy under the Fifth Amendment to the United States *Page 1352 
Constitution. However, as the court in Curry noted: "Gori itself suggested, as an example of double jeopardy, cases `in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused.'" (Curry, supra, 2 Cal.3d at p. 716, quoting Goriv. United States, supra, 367 U.S. at p. 369.) The mistrial here, because it was based on a bias in favor of the defendant, helped the prosecution, not the defense. Thus, even under the more limited double-jeopardy rules available under federal law, petitioner, unlike the petitioner in Larios, would be entitled to an order dismissing the complaint.
Under California's Constitution, which provides broader double jeopardy protection, petitioner's right to a dismissal is indistinguishable from the right recognized in Larios. In Curry the court expressly rejected the notion that California's double jeopardy provision only applies when, as here, the mistrial protects the prosecution. "[W]e adhere to our decision in Cardenas not to adopt the Gori rule in applying the double jeopardy provision of the California Constitution. Benton [395 U.S. 784, 795-796] requires only that the states accord their citizens at least as much protection against double jeopardy as is provided under theFifth Amendment of the United States Constitution; it does not forbid a state from according a greater degree of such protection. [Citation.] BothBenton(395 U.S. at pp. 795-796) and our opinion in Gomez v. SuperiorCourt (1958) 50 Cal.2d 640, 644, quote with approval the statement that `The underlying idea [of the protection against double jeopardy], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' [Citation.] We believe the same embarrassment, expense, and anxiety would be visited upon an individual who is compelled to defend himself a second time because his original trial was aborted without his consent by a well- meaning but overly solicitous judge.
"A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. *Page 1353 
These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.
"Accordingly, except in the limited instances of `legal necessity,' the policy underlying the prohibition against double jeopardy will best be served by firmly adhering to the rule that after jeopardy has attached, no mistrial can be declared save with the defendant's consent." (Curry, supra, 2 Cal.3d at pp. 716-718, fns. omitted.)
Next, the People assert Larios is distinguishable because in Larios the trial court never formally dismissed the questionable juror but instead simply declared a mistrial after the parties refused to go forward with 11 jurors, while here the trial court dismissed the juror and then, after the parties declined to go forward with an 11-person jury, declared a mistrial. This difference in procedural mechanics is not material. In each case the trial court acted without the consent of the defendant and without legal necessity.
Finally, the People contend Larios is inapplicable because the Larios
juror had not yet shared his information with the other jurors, whereas here the juror described her past experience to the rest of the jury. This distinction is unconvincing because the underlying absence of legal necessity for a mistrial still exists. Whether one juror or all the jurors were privy to the outside information, there was no evidence any of them were incapable of rendering a verdict.[2]
Because no legal necessity forced the court to declare a mistrial, petitioner may not be tried again. As stated in Curry: "[W]e do not deal here with a mere technicality of the law: . . . `Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power.'" (Curry, supra, 2 Cal.3d at p. 718.)
 DISPOSITION
Here, petitioner's jury was dismissed without his consent and without legal necessity after jeopardy attached. A second trial is barred by the constitutional guarantee against double jeopardy. Let a peremptory writ of *Page 1354 
mandate issue directing superior court to vacate its order of November 15, 2002, and to enter an order granting the motion to dismiss. The stay issued by this court on November 21, 2002, is vacated.
We Concur:
NARES, J.
McDONALD, J.
[1] We note respondent argues the writ should be denied for failure to include a complete record. However, by way of its response respondent has provided us with all the record it claims should have been part of the initial record. Hence its claim is now moot.
[2] It is worth noting the information shared was not necessarily prejudicial to either side. Knowledge that a juror has experienced a situation similar to that faced by the defendant does not guarantee the other jurors receiving the information will form a bias in favor of the defense. *Page 1355