Filed 9/15/16  P. v. Romero CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVIO ROMERO,<br><br>    Defendant and Appellant. | B264888<br><br>(Los Angeles County<br>Super. Ct. No. NA098451) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

Salvio Romero, in pro. per.; and Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

A jury convicted Salvio Romero (Romero) of failing to register as a sex offender (Pen. Code,[1] § 290.013, subd. (a)) and the court subsequently sentenced him to seven years in state prison. On appeal, Romero argues that this court should reverse his conviction because, inter alia, he was (a) subjected to double jeopardy and/or (b) denied the effective assistance of counsel. We disagree and, accordingly, affirm the judgment.

## BACKGROUND

### I.  Romero's prior convictions as a sex offender

In 2002, Romero was convicted of two counts of committing a lewd act against a child under the age of 14/15 (§ 288, subd. (c)(1)) and two counts of oral copulation with a person under the age of 14. In 2005, Romero was convicted of two counts of indecent exposure in public (§ 314, subd. (1)). In 2007, Romero was convicted of four counts of exposing his private parts in public (§ 314, subd. (1). In 2008, Romero was convicted of four counts of indecent exposure in public (§ 314, subd. (1)). As a result of these convictions, the law required Romero to register with local law enforcement as a sex offender.

### II.  Romero's conviction for failure to register as a sex offender

#### A.  *Long Beach registration requirements for sex offenders*

When a registrant first moves into the City of Long Beach, he or she has five days to initially register as a sex offender. If a registrant maintains a stable address within the city, he or she must reregister once a year, within five days before or after his or her birthday. If a registrant is a transient, then he or she must register with law enforcement every 30 days. If a person has more than one residence, he or she must register both addresses. If a registrant moves out of the city of Long Beach, the registrant must "register out" and reregister with local law enforcement in the location of his or her new residence. Form 8102 used by the Long Beach police department spells out all of these

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

registration obligations to sex offenders.

In addition to registering, all paroled sex offenders living within the city of Long Beach must wear around their ankle a global positioning system (GPS) monitoring device that tracks the registrant's movements. The device can only be removed by cutting it or breaking the plastic binders that hold the band into the GPS unit.

*B.    Romero's failure to comply with the registration requirements*

On July 23, 2013, the parole agent assigned to supervise Romero personally placed a GPS device on Romero's left ankle. On October 3, 2013, Romero registered with the Long Beach police department, reporting that he currently resided at one address: 2426 Wardlow (the Wardlow address). The Wardlow address is a housing unit for parolees run by Pathways. Romero's parole officer placed Romero at the Wardlow address because it was hard for Romero to find housing. Romero moved to the Wardlow address in September 2013 and paid rent for the month of September.

On October 20, 2013, Long Beach parole officers, assisted by Long Beach police officers, conducted a registration compliance check of Romero.[2] The VeriTracks system for the GPS ankle bracelet showed Romero to be at an apartment complex at 1575 Chestnut Avenue in Long Beach (the Chestnut address). At the Chestnut address, the parole officers located Romero's GPS ankle bracket inside in a brown paper bag in a shopping cart, in front of one of the apartments—but they were unable to find Romero, even though they knocked on every door of the complex. Residents at the apartment complex told the parole officers that they did not know Romero and had not seen him.

Unable to find Romero at the Chestnut address, the parole officers went to Romero's residence of record, the Wardlow address. At the Wardlow address, the officers were unable to find Romero. The officers spoke with other parolees living there and the manager of the residence about Romero.

---

[2] According to documents submitted with Romero's supplemental brief, it appears that on October 20, 2013, Long Beach parole officers were also investigating a complaint alleging that Romero was "masturbating in front of others in front of a mirror."

3

In late October 2013, after learning that Romero had cut off his GPS ankle bracelet, the manager of the Wardlow address took Romero's name off of the apartment's roster, bagged up Romero's possessions, and placed them in the garage at the Wardlow address. In late October and again in mid-November 2013, Romero called the manager of the Wardlow address asking about his possessions and how he might reclaim them.

On November 13, 2013, in a subsequent follow-up visit to the Wardlow address, a Long Beach police detective spoke with Romero's roommate, who at the time had been living there for three months. According to Romero's roommate, Romero had not been living at the Wardlow address for approximately a month.

### C. Conviction and sentencing

On March 17, 2014, the court held a preliminary hearing. At the preliminary hearing, the People relied on the testimony of the investigating detective who had gone to the Wardlow address and had interviewed Romero's roommate. The court found that there was sufficient evidence to hold Romero for failing to register a change of address in compliance with section 290.013, subdivision (a). Romero's arraignment occurred on April 1, 2014, at which time Romero pled not guilty to the single count information.[3]

On May 22, 2014, the People filed a first amended information, adding additional allegations regarding prior felony convictions. On May 27, 2015, Romero pled not guilty to the single count amended information and, although he felt that his court-appointed attorney was ineffective, Romero nonetheless withdrew his *Marsden*[4] motion to discharge his attorney. On that same day, the court granted Romero's request to continue the trial until June 2, 2014, so that his counsel could further investigate information provided by a new witness.

On June 2, 2014, the first day of trial, the court denied Romero's motion to

---

[3] According to documents submitted with his supplemental brief, Romero apparently turned himself in to Los Angeles County Sheriff's deputies on November 5, 2013, in order to avoid having "an outstanding warrant against him."

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

4

dismiss the information due to insufficient evidence at the preliminary hearing. The court found that "[b]ased upon the information presented to the magistrate in this . . . case, there's sufficient cause to prove each and every element of the charge . . . ."

On June 3, 2014, after less than an hour of deliberation, the jury found Romero guilty of failing to update his sex offender registration with a change of address. On June 4, 2014, the jury found true the People's allegations regarding Romero's prior convictions. On July 2, 2014, the court sentenced Romero to seven years in prison.

*D.     Appeal*

On June 24, 2015, this court granted Romero leave to file a belated notice of appeal, which he did on June 25, 2015. On September 28, 2015 and again on December 31, 2015, we appointed counsel to represent Romero, and, on May 2, 2016, after examining the record, counsel filed an opening brief raising no issues and asking this court to review independently the record in this case. On May 5, 2016, we advised Romero that he had 30 days in which to submit any contentions or issues that he wished us to consider. On June 30, 2016, we granted Romero's request for an extension of time to file a supplemental brief. On August 4, 2016, we received Romero's supplemental brief.

**DISCUSSION**

Romero's claims in his supplemental brief fall into two basic categories. The first group of claims are those that are flatly contradicted by the record. For example, he contends that he never entered a plea to the first amended information or consented to setting trial more than 60 days beyond the April 1, 2014 arraignment date. However, the transcript from the May 27, 2014 hearing is clear—Romero's counsel, after Romero withdrew his *Marsden* motion, stated on the record that his client was entering a plea of not guilty (a plea that was reaffirmed on June 2, 2014, at the start of trial) and was requesting a short continuance beyond the 60-day deadline, a request that the court granted.

Similarly, Romero contends that the operative information incorrectly alleged a juvenile adjudication and further contends (in a wholly conclusory manner) that this

5

adjudication was never proved beyond a reasonable doubt. Again, Romero's assertion is flatly belied by the record: the earliest prior conviction alleged in the amended information is a drug-related conviction in 1993 when Romero was 22 years old. Moreover, at the bifurcated proceeding on the prior convictions, the People produced a certified abstract of judgment for the 1993 conviction. At the trial on the prior convictions, while Romero's counsel challenged the accuracy of an abstract of judgment for another conviction, there was no challenge whatsoever to the accuracy of the abstract of judgment for the 1993 conviction—no cross-examination of the People's witness regarding the 1993 conviction, no defense witnesses or documentary evidence contesting the conviction or the accuracy of the abstract of judgment. In other words, the jury's finding on the 1993 conviction was based on undisputed evidence that the jury could and did find credible.

The second group of claims, as discussed below, are those that cannot be evaluated properly on the record before us.[5]

## I. Romero's double jeopardy claim

Romero contends he has been subject to double jeopardy and/or denied a speedy trial. More specifically, Romero claims that a prior case involving the same exact charge was brought against him and then dismissed (No. NA097541).[6] Romero contends that

---

[5] Romero does make one other argument that does not fall into either category. In a single, short sentence at the very end of his supplemental brief, Romero challenges the trial court's decision to deny his section 995 motion. Under well-established principles of appellate review, "[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.'" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Because Romero's argument about the ruling on his 995 motion is so completely conclusory, we decline to review it.

[6] According to documents submitted by Romero with his supplemental brief, it appears that the court held a preliminary hearing in NA097541 on December 18, 2013 and, based on the evidence presented, found that there was a "strong suspicion" that

6

because NA097541 was dismissed due to delay, the instant case was "wrongfully refiled" and is barred by the doctrine of double jeopardy. This argument does not appear to have any legal merit.

First, while it is true that, once jeopardy attaches, a dismissal of a case will bar retrial on the same charges (see *Larios v. Superior Court* (1979) 24 Cal.3d 324, 328–329; *Curry v. Superior Court* (1970) 2 Cal.3d 707, 712), it is not at all clear on the record before us that jeopardy ever attached in NA097541. A defendant is in "jeopardy" only when he or she is placed on trial for an offense, on a valid indictment or information or other accusatory pleading, before a competent court, and with a competent jury, duly impaneled, sworn, and charged with the case. (See *Jackson v. Superior Court* (1937) 10 Cal.2d 350, 352, 355; *People v. Pitts* (1990) 223 Cal.App.3d 606, 877–878 [same], superseded by statute on other grounds as stated in *People v. Levesque* (1995) 35 Cal.App.4th 530, 537.) In addition, the timely refiling of charges once dismissed for denial of a speedy trial has been deemed constitutionally permissible absent a showing by the accused of actual prejudice. (See *Crockett v. Superior Court* (1975) 14 Cal.3d 433, 437; see also *Paredes v. Superior Court* (1999) 77 Cal.App.4th 24, 28 [felony case dismissed once for delay can be refiled]; *People v. Lilliock* (1968) 265 Cal.App.2d 419, 435 [same], overruled on another point in *People v. Flood* (1998) 18 Cal.4th 470.) Here, there is no evidence that a jury was ever sworn in NA097541. Indeed, the only documents we have from NA097541 are those relating to its commencement—the transcript of the preliminary hearing and the People's subsequent information; we have no records regarding how or why NA097541 was dismissed or otherwise resolved. In other words, the record before us does not allow us to determine whether jeopardy attached in NA097541. (See generally *Hotels Nevada, LLC v. L.A. Pacific Center, Inc*. (2012) 203 Cal.App.4th 336, 348.)

Second, even assuming, arguendo, that the record before us was complete with

Romero failed to register in a timely manner as a sex offender. An information, signed on December 26, 2013, was apparently filed on January 2, 2013.

regard to NA097541, Romero has not established how the refiling of the failure to register charges on April 1, 2014 actually prejudiced him. (*Crockett v. Superior Court*, *supra*, 14 Cal.3d at p. 437 ["defendant is burdened with the obligation to demonstrate that he is prejudiced"].) Prejudice occurs where the delay impedes presentation of evidence in the defense case. (*People v. Hernandez* (1992) 6 Cal.App.4th 1355, 1359.)

Accordingly, because Romero has not provided an adequate record nor explained how the delay between NA097541 and the trial in the instant case compromised his defense, we decline to consider his double jeopardy claim.

## II. Romero's ineffective assistance of counsel claims

With regard to the remainder of Romero's arguments, they fall into the category of ineffective assistance of counsel claims. For example, Romero variously argues that his attorney failed to (a) file a motion to dismiss based on his double jeopardy claim, (b) present evidence that he was at home on October 20, 2013, (c) present evidence that he had turned himself into the authorities on November 5, 2013, (d) challenge the amended information's absence of an exact date when the offense was committed, and (e) impeach certain witnesses. As discussed below, we decline to review these claims.

To prevail on a claim of ineffective assistance of counsel, defendant must establish that his or her attorney's representation fell below professional standards of reasonableness and must affirmatively establish prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Hart* (1999) 20 Cal.4th 546, 623–624.) If the defendant's showing is insufficient as to one component of this claim, we need not address the other. (*Strickland*, at p. 697.)

However, "[a] claim on appeal of ineffective assistance of counsel must be rejected "'[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'" [Citations.] Unless the record affirmatively discloses that counsel had no tactical purpose for his act or omission, 'the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the

8

basis, if any, for counsel's conduct or omission.'" (*People v. Hinds* (2003) 108 Cal.App.4th 897, 901.)

As our Supreme Court observed in *People v. Mendoza Tello* (1997) 15 Cal.4th 264, "[b]ecause claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding, the rules generally prohibiting raising an issue on habeas corpus that was, or could have been, raised on appeal [citations] would not bar an ineffective assistance claim on habeas corpus." (*Id.* at p. 267.) In *Mendoza Tello*, the Supreme Court unanimously reversed the Court of Appeal's reversal of the defendant's conviction on the grounds that counsel was ineffective for failing to make a suppression motion; the court did so due to gaps in the record: "On this record, we do not know what Deputy Gomez would have said had he been asked at a suppression hearing why he did what he did. . . . [P]erhaps he did have a reason, of which defense counsel was aware, and which justified counsel's actions. Perhaps there was some other reason not to suppress the evidence." (*Ibid.*) "No one gave [the deputy] the opportunity to point to any specific and articulable facts justifying his actions. Nor did the prosecution have the opportunity to offer some other possible reason not to suppress the evidence." (*Ibid.*)

The lesson from *People v. Mendoza Tello*, *supra*, 15 Cal.4th 264, is that an appellate court should not reverse "unless it can be truly confident *all* the relevant facts have been developed." (*Id.* at p. 267, italics added.) Or, as the court in *People v. Hinds*, *supra*, 108 Cal.App.4th 897, put it, "[w]e are wary of adjudicating claims casting aspersions on counsel when counsel is not in a position to defend his conduct. A claim of ineffective assistance of counsel instead is more appropriately made in a habeas corpus proceeding." (*Id.* at p. 902.)

Accordingly, we decline to review Romero's ineffectiveness of counsel claims because the record does not contain any explanation for his counsel's conduct, or necessarily rule out a satisfactory one. Thus, while we affirm the judgment, we do so "without prejudice to any rights [Romero] may have to relief by way of a petition for writ of habeas corpus." (*People v. Garrido* (2005) 127 Cal.App.4th 359, 367.)

9

In sum, we have examined the entire record before us and are satisfied that Romero's appointed appellate counsel fully complied with her responsibilities and that no arguable issues currently exist.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110; *People v. Wende* (1979) 25 Cal.3d 436, 441.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        JOHNSON, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.


10