[Crim. No. 246. Fourth Appellate District.—May 19, 1933.]

THE PEOPLE, Respondent, v. WILLIAM B. KELLY, Appellant.

George A. Malette for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged in an information filed by the district attorney of San Diego County with the crime of burglary, to which charge he pleaded not guilty and also entered a plea of once in jeopardy, in that he had theretofore been tried for the same offense in the superior court of that county. A jury found the defendant guilty of burglary in the second degree and returned a verdict for the People on the plea of once in jeopardy. From the ensuing judgment and from an order denying his motion for a new trial, this appeal is taken.

The only point raised by appellant is that the evidence does not sustain the jury's verdict against him on the plea of once in jeopardy, the contention being that it conclusively appears that upon a previous trial of the appellant for the same offense a mistrial was ordered without his consent.

At the close of the People's case this appellant introduced evidence in support of his plea of once in jeopardy only. This evidence consisted of a stipulation and an exhibit. Because of the importance of the question to the appellant the stipulation, the exhibit, and what was said in reference to admitting the exhibit is set forth in full as they appear in the transcript:

"Mr. Malette: I will state for the purposes of the record and for the ladies and gentlemen of the jury the stipulation:

"It is stipulated that on January 3rd, 1933, before the Hon. Judge Mundo, a judge of the superior court of San Diego county, California, the defendant, William B. Kelly, who is now on trial was at that time placed on trial before a competent jury, the jury was sworn to try the issues, evidence was taken, and in the course of the prosecution's presenting of certain evidence of J. L. Berg, the court adjourned, as is shown by an exhibit to be introduced and a mistrial declared by the court, is that satisfactory?

"Mr. Bristow: That is the facts.

"Mr. Malette: And I offer this exhibit—you will stipulate this may be introduced as an exhibit?

"Mr. Bristow: Oh, yes.

"The Court: It may be received in evidence and marked the Defendant's Exhibit A.

"Mr. Malette: And, Ladies and Gentlemen of the Jury, I will read this to you. You will be instructed by the court if

you desire you may take it to the jury rooms with you. This is a section of part of the transcript of the shorthand notes as taken by the shorthand reporter and transcribed which has a bearing upon the mistrial, it refers to the book and page of the transcript:

"(Mr. Malette reads:

" '(B. 2682–p. 81)

" 'January 4, 1933.

" 'J. L. Berg, under cross-examination by Mr. Malette: . . .

" 'Q. On the 20th, I believe, was the next time that you —?

" 'A. 21st.

" 'Q. 21st; when you interrogated Mr. Kelly and made certain statements to him, at that time did he deny participation in the crime he is here charged with? A. Yes, he made denials at that time.

" 'Mr. Malette: If the court please, at this time I ask that all of the testimony pertaining to these statements be struck from the record and the jury admonished not to consider them.

" 'The Court: We will take a fifteen minute recess at this time, and remember the admonition of the court. Counsel will remain.'

" (Jury retires)

" 'The Court: Now, I am going to take up the matter here.

" 'Mr. Bristow: May I call Mr. Berg back to the stand, your honor? I asked him in the room just now—

" 'The Court: No. I am sorry. You have gone beyond the line, this case is another mistrial and that is all there is to it.

" 'Mr. Bristow: I talked to the detectives, I talked to them time and again; he says, in there, he meant by denials, he meant, he says "I have nothing to say." That is his interpretation of a denial. Now, I talked to them, very carefully went over this to be sure there was no mistake this time. I went over it carefully, and was very careful in it, and I said "Now, at any time was there any denial by him that he done—took part in it?" He said, at that time he said "It is up to the jury to determine. You cannot incriminate me. You cannot get me to incriminate myself,

and I have nothing to say. And at no time was there an overt denial.

" 'Mr. Malette: His testimony on the witness stand cannot be any more clear and explicit than the answer to my question. I am satisfied, if the court please, this case should either result in a mistrial or an instructed verdict. I am going to ask that we have an instructed verdict in this case, because I hate to see the county go to the expense of three different trials in this case on the same point; the same question was up in Harden's court and the same ruling was made.

" 'Mr. Bristow: It is not the same thing at all, you know it.

" 'Mr. Malette: The question was asked in practically the same words, and, Mr. Berg—his answer was the same as given here. The court said it was a mistrial.

" 'Mr. Bristow: It was not the same thing, Mr. Malette, and you knew the facts were entirely different. Mr. Berg testified to the conversation on the train, at that time was asked if he made a denial. I brought it out myself at that time, because he said he made denials all the way down. And the court here—at our—I do not want to be in the position, your honor, of being in the attitude of attempting to impose upon this court. The court heard me at the time we argued this matter out. He asked the witness what he said, what was done, and I went over it, in the court's presence—

" 'The Court: We will have a ten minute recess.'

" (Stipulated the jury is present.)

" 'The Court: Because of certain testimony which was given by Officer Berg the court finds that it constitutes error, reversible error, constitutes grounds for a mistrial, and therefore the court declares a mistrial, excuses and discharges the jury from further duty upon this trial.') "

█ Appellant and respondent are in accord upon the general principles of law that, with certain exceptions not applicable here, where a defendant is placed upon trial before a competent court and jury upon a valid indictment or information, and where the jury, without the consent of the defendant, is discharged before reaching a verdict, the defendant has been in jeopardy and may not again be tried upon the same charge. It is equally well settled that where a defendant has consented to the discharge of a jury before

a verdict is reached, the plea of once in jeopardy is not available to him. (*People* v. *Webb,* 38 Cal. 467; *People* v. *Hunckeler,* 48 Cal. 331; *People* v. *Young,* 100 Cal. App. 18 [279 Pac. 824].) Consent is implied under some circumstances, as, for instance, where a defendant moves in arrest of judgment, asks to have the judgment vacated or seeks a new trial. (*People* v. *Tong,* 155 Cal. 579 [102 Pac. 263, 132 Am. St. Rep. 110, 24 L. R. A. (N. S.) 481].) ▮ That a defendant has been once in jeopardy is a matter of defense to be relied on in another trial, must be specially pleaded as a bar, and the facts constituting the bar must be found by the court or the jury. (*In re Harron,* 191 Cal. 457 [217 Pac. 728].)

▮ In the case before us, former jeopardy was pleaded and evidence introduced in support of that plea.. While this evidence is in fact deficient in that it nowhere appears therefrom that the former trial referred to, in which a mistrial was declared and the jury discharged, was upon the same charge as that in the present case, the only question here argued is whether the evidence is sufficient to support a finding that the appellant consented to the action taken by the trial court in the former proceeding, in declaring a mistrial and discharging the jury.

The language used by appellant's counsel at the time in question, that he was satisfied that "this case should either result in a mistrial or an instructed verdict", not only expresses satisfaction with either of the things referred to, but practically amounts to a request on the part of the defendant that the court either declare a mistrial or in due time advise a verdict. To say that a defendant is satisfied that a case should result in a mistrial, in sound reason and common sense, strongly implies a consent that such a result should obtain.

We think this conclusion is borne out by what followed. After making the remark referred to, counsel went on to say that he intended to ask for an instructed verdict because he hated "to see the county go to the expense of three different trials in this case on the same point". In effect he was arguing that while the case must result in either a mistrial or an instructed verdict, an instructed verdict was to be preferred as saving expense to the county. His statement indicates specifically an expectation that such a third trial,

if ordered, would be upon the same point that had just arisen in that trial and which had apparently arisen once before, and not upon the issue of former jeopardy now relied upon. While this expression indicates a hope that the court might be induced to advise a verdict, it also indicates an intention to meet the same point again and strengthens the conclusion that the defendant consented to having a mistrial ordered unless the court was willing to advise a verdict.

This matter had started with a request that certain testimony deemed erroneous be stricken from the record and the jury admonished not to consider the same. After the jury had retired the court suggested that the circumstances indicated a mistrial. The only reasonable interpretation of what followed is that counsel, for the time at least, abandoned his request to strike out testimony and, a mistrial having been suggested by the court, was taking advantage of the circumstances to press a larger issue. The matter then under immediate consideration was the question of a mistrial, and counsel added the suggestion that he proposed to ask for an advised verdict because of the expense involved in another trial. The only subsequent discussion was between counsel and conceived whether the matter that had arisen was the same point that had previously caused trouble. Appellant's counsel reinforced his argument that the points were the same with the statement, "The court said it was a mistrial." The natural and reasonable effect of the language used is to indicate consent to the matter under immediate consideration, the ordering of a mistrial, unless the court was disposed to favor the suggestion made for an advised verdict.

It may be further observed that the statements made were such as would naturally lead the court to believe that the defendant consented to a mistrial order. Had nothing been said in this regard, the court could have protected the rights of the People by proceeding with the case. Even if the statements made are capable of a double construction, they should be viewed in the light of the circumstances in which they were uttered and with a view of determining what was intended. Thus viewed, we think the statements made were such as to justify the court in believing that an order of mistrial was consented to. Under such circumstances an appellant may not insist upon such a construction of state-

ments made by him as would only tend to show that the court was misled thereby.

We think the evidence supports the verdict upon the plea in bar. The judgment and order appealed from are affirmed.

Jennings, J., and Andrews, J., *pro tem.*, concurred.