[No. B026734. Second Dist., Div. One. July 15, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
CAROLYN JEAN CHANEY, Defendant and Respondent.

COUNSEL

Ira Reiner, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

SPENCER, P. J.—

### INTRODUCTION

The People appeal from an order of dismissal entered after defendant Carolyn Jean Chaney entered a plea of once in jeopardy.

### PROCEDURAL BACKGROUND

Defendant originally was charged by information with the offense of murder (Pen. Code, § 187). At the conclusion of defendant's jury trial, the trial court instructed the jury on the degrees of murder and on voluntary and involuntary manslaughter as lesser necessarily included offenses. The

court did not instruct the jury it could render a partial verdict of acquittal on a greater degree or offense if it became deadlocked only on a lesser degree or offense.

The jury began deliberations on January 16, 1986, thereafter deliberating for some complete and some partial days until January 23. At that time, the jury returned to court. The foreman informed the trial court the jury had been "seriously deliberating," with all members participating in the deliberations. Nevertheless, the jury was unable to agree upon a verdict. In response to the trial court's request, the foreman stated the vote was 10 to 2 and had been that way since the first ballot; he heeded the court's admonition not to give any more detail about the split in the vote.

The court inquired twice whether the foreman was stating the jury could not reach a verdict on any of the possibilities, but did not inquire whether the jury had been able to eliminate the question of defendant's guilt on any one or more offenses. The foreman explained, "there is just this difference . . . on the matter of intent." He added, "We have reached unanimity . . . on several items. Where we are disagreeing is on the degree. . . . The division is on two close possibilities, and . . . it's been this way just about from the first day of the deliberation." When the foreman attempted to explain his meaning in greater detail, the trial court cut him off. The trial court then polled the remaining jurors, who agreed unanimously the jury could not reach a verdict.

Thereafter, the trial judge discussed the possibility of declaring a mistrial with both counsel, stating: "it probably would not serve any purpose [to continue] this further." Defense counsel then pointed out the deliberations had not in fact been lengthy and opined the jury apparently was deadlocked on a degree of offense; accordingly, he sought further inquiry into the nature of the jury's inability to reach a verdict. The trial court declined to make any further inquiry, but defense counsel persevered, endeavoring to convince the court to expand the scope of inquiry and polling of the jurors. The trial court then agreed to inquire as to the number of ballots the jury had taken, but warned: "If it doesn't change my mind, I will grant a mistrial. If you don't want me to do it after I ask that, you let me know." The prosecutor responded, "All right"; defense counsel remained silent.

Further discussion followed, during which defense counsel attempted to secure further inquiry even in the event the trial court ordered a mistrial. He stated, "if the Court does declare a mistrial, I would ask the Court to inquire on the record . . . as to the exact vote and how it stood." When the court indicated a misunderstanding of counsel's meaning, he continued: "I mean after the Court declares a mistrial, the Court can ask before excusing

the jury which way they voted. I would like that on the record." The trial court declined to make that inquiry, but proceeded to determine the number of ballots the jury had taken. After learning the jury had taken six or seven ballots, the court found the jury was hopelessly deadlocked and declared a mistrial "for legal cause," excusing the jury and setting the matter for retrial. After court adjourned, both the prosecutor and defense counsel conversed with the jurors.

In support of defendant's subsequent plea of once in jeopardy, defense counsel presented his own declaration. This provides in pertinent part: "Following the mistrial both the [prosecutor] and [I] went to the hall to discuss the matter with the jurors. All twelve of the trial jurors were waiting in the hallway. However, as I approached the larger group of jurors, I noticed that two of the twelve jurors had begun a private conversation with [the prosecutor] a few feet away from where the other ten were standing in a close group. Both my client and I approached the larger group, who were not only willing but anxious to discuss the case with us. It was at this time that my client and I were told the vote of the jury had been 10 for involuntary manslaughter, and two for voluntary manslaughter. The ten jurors who voted for involuntary manslaughter were those [we] were speaking with. The two jurors who had held out for voluntary manslaughter were those discussing the case with [the prosecutor]. It was absolutely clear from my discussion with all of the ten jurors that I was speaking with that the jury had long ago agreed, unanimously, that the Defendant was not guilty of murder, and that the vote of the jury had been ten for involuntary manslaughter and two for voluntary manslaughter since the first day of deliberation . . . ."

In opposition, the People filed the declaration of Irene Maffahey, one of the jurors serving in the deadlocked jury. Ms. Maffahey declares she served as a juror in defendant's case and deliberated with the other jurors. She continues, "I personally believe that defendant is guilty of first degree murder but at no time did we complete our deliberations. We were unable to reach a verdict. At no time did the jury reach unanimous agreement that the defendant was not guilty of first or second degree murder. And at no time would I agree that the defendant was not guilty of first degree murder. However, temporarily in an effort to reach a verdict I voted for a lesser included offense. [¶] Since we did not reach a verdict, I was never asked while I [w]as a juror, by the court, what my personal verdict was at that time. [¶] Further, there was another juror who also believed that the defendant was guilty of second degree murder. She also, in an effort to reach a verdict during the balloting in the jury room voted for a lesser included offense."

After considering defendant's plea and the People's opposition thereto, the court found jeopardy had attached as to all offenses, relying solely on *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809]. Accordingly, the court dismissed the matter.

## CONTENTIONS

### I

The People contend the court erred in dismissing the matter, in that defendant consented to the declaration of mistrial.

### II

The People further contend the court erred in dismissing the matter, in that there exists legal justification for the declaration of mistrial.

## DISCUSSION

Preliminarily, we consider whether the order of dismissal is appealable by the People. ■ Pursuant to Penal Code section 1238, subdivision (a)(8), the merits of an appeal from an order of dismissal may be reached only if it is determined that jeopardy did not attach. (*People* v. *Smith* (1983) 33 Cal.3d 596, 601, fn. 3. [189 Cal.Rptr. 862, 659 P.2d 1152]) Hence, the first inquiry an appellate court must make is jurisdictional; it must determine whether the defendant was placed in jeopardy. (*Ibid.*)

Generally, "where a jury is discharged for failure to reach a verdict, jeopardy does not attach because the law places the parties back in status quo as if no trial had ever occurred." (*People* v. *Wheeler* (1971) 23 Cal.App.3d 290, 311 [100 Cal.Rptr. 198], disapproved on other grounds in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 286-287 [148 Cal.Rptr. 890, 583 P.2d 748]; accord, *People* v. *Allen* (1974) 41 Cal.App.3d 821, 824-825 [116 Cal.Rptr. 493].) However, when a case has been dismissed following a plea of once in jeopardy, the general presumption does not clearly operate. In the instant matter, therefore, the pertinent inquiry is whether the motion for dismissal was made before defendant was again placed in jeopardy and, if it was, to deem the dismissal appealable. (*People* v. *Smith, supra,* 33 Cal.3d at p. 602.) Here, the motion was made before defendant was again placed in jeopardy; consequently the dismissal is appealable.

### I

■ The People contend the trial court erred in dismissing the instant matter, in that defendant consented to the declaration of mistrial. We disagree.

 An otherwise legally insufficient declaration of mistrial may become legally sufficient where the defendant has consented to the declaration of mistrial. (See *Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 516; cf. *Larios* v. *Superior Court* (1979) 24 Cal.3d 324, 332 [155 Cal.Rptr. 374, 594 P.2d 491].) It is conceded in the instant matter defendant did not *expressly* consent to the declaration of mistrial; the People rely instead on their perception of implied consent thereto.

 A defendant's consent to a declaration of mistrial cannot be inferred from mere silence. (*People* v. *Compton* (1971) 6 Cal.3d 55, 62 [98 Cal.Rptr. 217, 490 P.2d 537]; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345]; *Hutson* v. *Superior Court* (1962) 203 Cal.App.2d 687, 691 [21 Cal.Rptr. 753].) However, "affirmative conduct by the defendant may constitute a waiver if it *clearly evidences* consent." (*Curry, supra,* 2 Cal.3d at p. 713, italics added; accord, *Compton, supra,* 6 Cal.3d at p. 62.) That is the case, generally, where a defendant has requested or joined in a request for a mistrial (*Curry, supra,* 2 Cal.3d at p. 713; *Magee* v. *Superior Court* (1973) 34 Cal.App.3d 201, 216 [109 Cal.Rptr. 758]; but see *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371] [consent will not be implied where defense counsel requests a mistrial but then attempts unsuccessfully to withdraw his request]) or defense counsel states expressly he has no objection to the jury's discharge (*Magee, supra,* 34 Cal.App.3d at p. 217).

Consent also will be inferred from such an act as requesting a "stay of all proceedings to enable a petition to be filed in the appellate court to mandate the trial court to declare a mistrial on the ground the jury could not agree" (*id.,* at p. 216) or indicating to the court that a directed verdict is preferable to a mistrial as saving expense to the county (*People* v. *Kelly* (1933) 132 Cal.App. 118, 122-124 [22 P.2d 526]). *People* v. *Terry* (1970) 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 961] also indicates it would have inferred consent where defense counsel originally made a motion for severance, which was denied. In the course of trial, a question arose under recently decided *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265] regarding one defendant's confession which incriminated his codefendant. Had a mistrial been declared in those circumstances, the court states, defendants would have been deemed to have consented to the mistrial, since it would have been granted to achieve their original objective of severance. (*Terry, supra,* 2 Cal.3d at p. 386.)

In each of these instances, "the statements made were such as would naturally lead the court to believe that the defendant consented to a mistrial order. Had nothing been said in this regard, the court could have protected the rights of the People by proceeding with the case. . . . Thus viewed,

. . . the statements made were such as to justify the court in believing that an order of mistrial was consented to." (*People* v. *Kelly, supra,* 132 Cal.App. at p. 123.)

 In contrast, consent will *not* be inferred where defense counsel merely fails to voice an objection to the declaration of a mistrial (*People* v. *Compton, supra,* 6 Cal.3d at p. 63; *Curry* v. *Superior Court, supra,* 2 Cal.3d at p. 713) or simply calls to the court's attention a matter of concern (*Compton, supra,* 6 Cal.3d at p. 62; *Hutson* v. *Superior Court, supra,* 203 Cal.App.2d at pp. 688-691). Neither will consent be inferred from such additional remarks as a comment to the prosecutor, " 'It's been a mistrial. You can file a new complaint,' " made after the court has indicated a clear intent to declare a mistrial. (*Id.,* at p. 692.)

 While acknowledging in principle the precept that consent will not be inferred from mere silence (*People* v. *Compton, supra,* 6 Cal.3d at p. 62), the People argue it nevertheless is a factor to be considered in the totality of the circumstances present in the instant matter. The People note the court stated, "If you don't want me to [declare a mistrial] . . . you let me know," in response to which the prosecutor acknowledged she would but defense counsel remained silent. Thereafter, the People argue, defense counsel's remarks clearly anticipated a mistrial might well be granted, requesting further polling of the jurors "if the court grants a mistrial" and phrasing argument in terms of the court's judicial power "after the court declares a mistrial." The People conclude the totality of this defense conduct clearly justified the court "in believing that an order of mistrial was consented to." (*People* v. *Kelly, supra,* 132 Cal.App. at p. 123.)

However, the circumstances upon which the People rely closely parallel those present in *People* v. *Compton, supra,* 6 Cal.3d 55. In *Compton,* defense counsel learned an alternate juror had told his barber in midtrial it was difficult to keep an open mind. Defense counsel brought this fact to the court's attention and requested further inquiry into the matter. The court questioned the alternate juror and then, without objection, declared a mistrial. (At p. 59.) Prior to doing so, the court asked both counsel, " 'do any of you have any strong objections to what I am going to do? Let me know now, but I think that is the only recourse.' " The prosecutor gave the guarded answer, " 'No comment, your Honor.' The court then asked defense counsel if he had 'anything further,' and the latter replied simply, 'No, your Honor.' " (*Id.,* at p. 63.)

 *Compton* finds no consent in these circumstances, noting first: "The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto

transform counsel's expression of concern into an implied consent to such drastic ruling." (6 Cal.3d at p. 62.) The court further rejects the assertion consent should be inferred from counsel's failure to object, though expressly given the opportunity to do so. (*Id.,* at p. 63.) · ██ *Curry* v. *Superior Court, supra,* 2 Cal.3d 707 at page 713 is in accord; when a trial court proposes to discharge a jury without legal necessity, "the defendant is under no duty to object in order to claim the protection of the constitutional guarantee [against double jeopardy], and his mere silence in the face of an ensuing discharge cannot be deemed a waiver. [Citations.]"

██ In the instant matter, the trial court learned the jury foreman believed the jury would be unable to reach a verdict, although it had reached unanimous agreement "on several items," and the vote had stood throughout the deliberations at 10 to 2; however, the court cut off any attempt by the jury foreman to explain further and proceeded to poll the jurors on their view of whether a verdict could be reached. Thereafter, the court indicated "it probably would not serve any purpose [to continue] this further." Defense counsel then pointed out the deliberations had not in fact been lengthy and opined the jury apparently was deadlocked on a degree of offense; accordingly, he sought further inquiry into the nature of the jury's inability to reach a verdict. The trial court declined to make any further inquiry, but defense counsel persevered, endeavoring to convince the court to expand the scope of inquiry and polling of the jurors. In doing so, defense counsel used the language, "if the court does declare a mistrial."

Contrary to the People's characterization, defense counsel's remarks and subsequent silence when invited to object do not clearly evidence consent; there simply is no qualitative difference between the circumstances at hand and those present in *People* v. *Compton, supra,* 6 Cal.3d 55 and *Curry* v. *Superior Court, supra,* 2 Cal.3d 707. In sum, the granting of a mistrial cannot be sustained on the ground defendant impliedly consented to it.

## II

██ The People further contend the trial court erred in dismissing the instant matter, in that there existed legal justification for the declaration of mistrial. Again, we disagree.

██ One primary purpose of the protection against double jeopardy is to prevent successive prosecutions for the same offense. "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and

compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119]) "Without the guarantee against double jeopardy, the chances of convicting innocent persons would be increased, both because the state would have unlimited opportunities to prosecute an acquitted defendant and because the exposure of the accused's defense in the first trial would provide the state with a major advantage in preparing for the second." (*Larios* v. *Superior Court, supra,* 24 Cal.3d at p. 329.)

■ In some circumstances, the constitutional protection against double jeopardy "bars a retrial even though no verdict has been rendered. Once jeopardy has attached, discharge of the jury without a verdict is tantamount to an acquittal and prevents a retrial, unless the defendant consented to the discharge or legal necessity required it." (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 516.) As discussed *ante,* defendant did not consent to the discharge in this case. *Stone* notes further, " '[s]uch a legal necessity exists if, at the conclusion of such time as the court deems proper, it satisfactorily appears to the court there is no reasonable probability that the jury can resolve its difference and render a verdict. Under these circumstances the court may properly discharge the jury and reset for trial.' " (*Ibid.,* quoting from *People* v. *Rojas* (1975) 15 Cal.3d 540, 545-546 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127].) It is this principle upon which the People now rely.

■ However, *Stone* v. *Superior Court, supra,* 31 Cal.3d 503, moves from the general principles set forth above to the specific issue presented there—"whether the double jeopardy clause requires formulation of a procedure for the receipt of partial verdicts in [cases where the jury is deadlocked]." (At pp. 516-517.) After noting it is within the discretion of the prosecution whether to charge but one greater offense in a single count or to charge both the greater offense and lesser included offenses in separate counts, *Stone* states: "For the purpose of delineating the scope of the double jeopardy protection, we believe the situation before us [in which only a single greater offense is charged, but the jury is instructed on lesser necessarily included offenses] to be logically indistinguishable from the case in which a greater offense and a lesser included offense are charged in separate counts. It would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense, and left it to the court to instruct on any lesser included offense supported by the evidence. In addition to seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he

has been factually acquitted, such a rule would make his substantive rights turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense." (*Id.,* at pp. 517-518.)

*Stone* goes on to note *Green* v. *United States, supra,* 355 U.S. at pages 190-191 [2 L.Ed.2d at pp. 205-206], "flatly rejected such a distinction." (31 Cal.3d at p. 518.) Relying on the *Green* rationale, the court concludes, "we decline to perpetuate the artificial distinction that has developed between expressly charged and impliedly charged lesser included offenses." (*Ibid.,* fn. omitted.) "Accordingly, we hold that in all cases in which the jury has not yet begun deliberations as of the date this decision becomes final, the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal necessity." (*Id.,* at p. 519.)

*Stone* continues: "To guide the trial courts of this state in fulfilling the obligations which this rule entails, we suggest procedures derived by analogy from the multiple count situation [citations]. [¶] When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense.

"Alternatively, the court may decide to wait and see whether the jury is unable to reach a verdict; if it is, the court should then inquire whether the jury has been able to eliminate any offense. If the jury declares itself hopelessly deadlocked on the lesser offense yet unanimous for acquittal on the greater offense, and the court is satisfied that the jury is not merely expressing a tentative vote but has completed its deliberations, the court must formally accept a partial verdict on the greater offense. It is within the discretion of the court to order further deliberations if it perceives a reasonable probability that a verdict will be reached that will dispose of the entire proceeding." (31 Cal.3d at pp. 519-520, fn. omitted.)

While it is undisputed the trial court in the instant case undertook neither of the alternative procedures suggested by *Stone* and made no other effort to ascertain whether the jury had indeed reached unanimity as to any offense, the People nevertheless argue *Stone* is inapplicable to the instant circum-

stances. In support of that argument, the People rely on the Maffahey declaration and certain passages in *People* v. *Griffin* (1967) 66 Cal.2d 459 [58 Cal Rptr. 107, 426 P.2d 507] and *People* v. *Doolittle* (1972) 23 Cal.App.3d 14 [99 Cal.Rptr. 810]. In turn, defendant asserts the Maffahey declaration must be rejected as inadmissible even without an objection below and *Griffin* and *Doolittle* have no vitality in the determination of the instant matter in light of the decision in *Stone*. It is this latter view which has merit.

The Maffahey declaration states: "I personally believe that defendant is guilty of first degree murder, and . . . at no time would I agree that the defendant was not guilty of first degree murder. However, temporarily in an effort to reach a verdict I voted for a lesser included offense." As defendant correctly notes, these statements disclose Ms. Maffahey's personal beliefs and mental thought processes, not the nature and course of the jury deliberations. Consequently, the declaration is per se inadmissible (Evid. Code, § 1150, subd. (a)), even without objection (*People* v. *Peavey* (1981) 126 Cal.App.3d 44, 50-51 [178 Cal.Rptr. 520]; *People* v. *Stevenson* (1970) 4 Cal.App.3d 443, 444-445 [84 Cal.Rptr. 349]). It follows the trial court was not entitled to rely on this declaration and this court must reject it. Moreover, even if it were admissible, it is irrelevant.

*People* v. *Griffin, supra,* 66 Cal.2d states at page 464: "After the jury was discharged, the foreman disclosed in open court that the jurors had stood 10 for acquittal and 2 for guilty of second degree murder. . . . We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity." *People* v. *Doolittle, supra,* 23 Cal.App.3d states much the same thing at page 21: "[I]n *Griffin* . . . , as in the case here, [the jury] had not completed its deliberations. In the instant case, as in *Griffin,* the ballots taken and voted upon may well have been the result of temporary compromises in an effort to reach unanimity." Also, as in *Griffin,* the information before the court regarding the jury's vote was revealed in postdischarge testimony. Noting *Stone* v. *Superior Court, supra,* 31 Cal.3d at pages 512-514 distinguishes these cases factually, the People argue *Griffin* and *Doolittle* must govern the instant matter.

However, while *Stone* does distinguish *Griffin* and *Doolittle* factually in considering the separate issue of whether effect should be given to implied partial verdicts of acquittal, the Supreme Court carefully notes its decision does not rest on that distinction alone: "there are other grounds for refusing to allow this defendant to be retried for murder. The present facts raise an

issue that was not addressed in *Griffin*: whether the double jeopardy clause requires that trial courts, in future cases, receive a partial verdict when the jury clearly favors acquittal on a charged offense but is unable to agree on the proper disposition of an uncharged lesser included offense. If we conclude that such a procedure is constitutionally mandated, then the discharge of the jury in the present case was premature with respect to the murder offenses, and Stone could not be retried thereon even if the jury had not in fact acquitted him." (31 Cal.3d at p. 514.)

 Of course, that is precisely the conclusion *Stone* did reach: "the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense." (*Id.,* at p. 519.) The unmistakable import of *Stone* thus is that evidence of an actual implied acquittal is unnecessary to take a declaration of mistrial outside the concept of legal necessity; it is enough if the trial court fails to afford the deadlocked jury with an *opportunity* to render a partial verdict of acquittal.

In the instant matter, the trial court failed to make any inquiry into whether the jury had been able to eliminate any offense, notwithstanding defense counsel's urging that it inquire further. In failing to do so, the trial court deprived the jury of any opportunity to render a partial verdict of acquittal. Hence, as *Stone* notes, even if the jury did not in fact acquit defendant of the murder charge, the court's failure to follow the constitutionally mandated procedure rendered the discharge of the jury premature with respect to that charge. (31 Cal.3d at p. 514.) It necessarily follows the discharge thus was without legal necessity. (*Id.,* at p. 519.)

The People further argue, however, even if retrial of the murder charge is barred the order of dismissal must be reversed to permit retrial of the lesser included offenses of voluntary and involuntary manslaughter. They rely on the holding of *Stone* v. *Superior Court, supra,* 31 Cal.3d at pages 520-522 that an implied verdict of acquittal of the greater charged offense does not bar retrial of the lesser included offense where it affirmatively appears the jury was deadlocked on the lesser offense. (Accord, *People* v. *Avalos* (1984) 37 Cal.3d 216, 227 [207 Cal.Rptr. 549, 689 P.2d 121]; *People* v. *Smith, supra,* 33 Cal.3d at p. 602.) In doing so, they point to the declaration of defense counsel that he was told by 10 of the jurors after their discharge "the vote of the jury had been ten for involuntary manslaughter and two for voluntary manslaughter."

The People assert, having submitted this declaration in support of the motion for dismissal, defendant is now bound by it, relying on *Chaquette* v. *Ortet* (1882) 60 Cal. 594, 600. *Chaquette* is not particularly supportive of

this assertion; in that case, the appellant asserted on appeal prejudice from an act of the lower court which he had induced. (*Ibid.*) That situation is not analogous to the one presented in the case at bar.

Moreover, it is highly doubtful defense counsel's declaration provided timely information regarding the jury's vote. ■ As noted in *People* v. *Soto* (1985) 166 Cal.App.3d 428 [212 Cal.Rptr. 425], once a jury has been discharged, the court is without power to recall it to clarify the verdict and such clarification is without effect. (At pp. 434-435.) *Stone* v. *Superior Court, supra,* 31 Cal.3d 503 at pages 513-514 relied, in part on this general principle in distinguishing *People* v. *Griffin, supra,* 66 Cal.2d 459 and *People* v. *Doolittle, supra,* 23 Cal.App.3d 14, noting: "In each, the trial judge was given no indication of how the jurors stood until *after* he had declared a mistrial and discharged the jury; in no case was the judge given the opportunity to receive a partial verdict." (Italics original.) In *Griffin,* after the trial court discharged the jury and declared a mistrial, the jury foreman stated in open court the jury had stood ten for acquittal and two for conviction of second degree murder. In *Doolittle,* in support of a motion to enter a plea of once in jeopardy the former jury foreman testified that on the jury's final vote no juror had voted to convict of first degree murder. Hence, each case is similar in timing to the instant matter.

■ In any event, as defendant correctly notes, *Stone*'s holding that an implied verdict of acquittal of the greater offense did not bar retrial of the lesser included offense arose out of its preliminary conclusion the implied partial verdict apparent in the jury polling conducted in open court *prior* to the jury's discharge must be given effect. (See 31 Cal.3d at p. 514.) *People* v. *Smith, supra,* 33 Cal.3d 596, also is clearly distinguishable; it, too, addressed only an implied verdict of acquittal of the greater offense *prior* to a declaration of mistrial and the question, previously decided by *Stone,* whether the partial verdict barred retrial on the lesser included offense. (See *id.,* at p. 602.)

Finally, *People* v. *Avalos, supra,* 37 Cal.3d 216, is of no assistance to the People. *Avalos* does not involve a declaration of mistrial; the jurors agreed the defendant was guilty of murder, but disagreed as to the degree of the offense. Nevertheless, the trial court ordered a general verdict of murder entered. (At p. 223.) On appeal, the Supreme Court concluded such a general verdict was improper, whereupon the People argued the court should "apply *Stone* . . . in some sort of converse manner," by allowing a partial verdict of conviction. (37 Cal.3d at p. 226.) The Supreme Court found such a procedure to be inappropriate, thereafter simply reiterating the *Stone* holding. (37 Cal.3d at p. 227.) In sum, the rule developed respecting the

propriety of retrial on lesser offenses after a partial verdict of acquittal simply has no application where no partial verdict has been received.

As noted previously, in the instant matter the jury was given no opportunity to render a partial verdict of acquittal and *Stone* is unequivocal in its prospective holding. It is now immaterial whether the jury would have rendered a partial verdict of acquittal or what that verdict would have been; the failure to provide the jury with the *opportunity* to do so causes "a subsequently declared mistrial to be without legal necessity." (31 Cal.3d at p. 519.) Once jeopardy has attached, the discharge of the jury in the absence of either consent or legal necessity is tantamount to a general acquittal and bars retrial. (*Id.,* at p. 516.) Since neither consent nor legal necessity is present in the instant case, the order of dismissal was proper; defendant may not be retried either on the murder charge or on any lesser necessarily included charge.

While this result may seem unfair, there are sound policy reasons supporting it. As *Curry* v. *Superior Court, supra,* 2 Cal.3d notes at page 718: "We are not unmindful of the apparent irony in denying the trial court jurisdiction to proceed because of a ruling made, at least in part, ostensibly for the benefit of these [criminal defendants]. But we do not deal here with a mere technicality of the law: . . . 'Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power.'"

The order of dismissal is affirmed.

Hanson, J., concurred.

**DEVICH, J.**—While I concur in the result, I write separately to emphasize how simple it would have been to avoid dismissal of this criminal action.

In 1982, our Supreme Court said in no uncertain terms that when a criminal jury deliberating a charge that contains lesser included offenses is not afforded an opportunity to render a partial verdict, any subsequently declared mistrial is without legal necessity and retrial is therefore barred under the double jeopardy clause. (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 514, 519 [183 Cal.Rptr. 647, 646 P.2d 809].) Thus was created a rule whose violation has particular significance. When a trial court errs by failing to provide the opportunity for a partial verdict, the error cannot be measured by any standard of prejudice. The error does not allow for reversal and retrial. Rather, to put it in the vernacular, the defendant walks.

The CALJIC committee responded promptly to *Stone.* In 1982 it created instruction No. 8.75 ("Jury May Return Partial Verdict—Homicide").[1] The extensive "Use Note" and "Comment" to this instruction explain that, as contemplated by *Stone,* it may be used either before jury deliberations have commenced or after the jury advises the court it cannot reach a verdict.

---

[1] CALJIC No. 8.75 provides: "In this case, defendant is charged [in Count _____ ] with the offense of murder. Murder is divided into two degrees—murder in the first degree and murder in the second degree. Voluntary manslaughter [and involuntary manslaughter] [is an] [are] lesser and necessarily included offense[s].

"The court [has provided] [will provide] you with verdict forms for each count charged and for each lesser and necessarily included offense. You should determine whether defendant is guilty or not guilty of the offense of first degree murder [charged in Count _____ ] [and any special finding you are directed to make]. If you unanimously agree that defendant is guilty of said offense [charged in Count _____ ] [and any special finding you are directed to make], you will have your foreman date and sign the guilty verdict [and return with it into court]. Nothing further will be then required of you as to Count _____ .

"If you unanimously agree that defendant is not guilty of murder in the first degree, you will have your foreman date and sign the not guilty verdict of the offense of murder in the first degree and you will determine whether defendant is guilty or not guilty of murder in the second degree. If you unanimously agree that defendant is guilty of the offense of murder in the second degree, you will have your foreman date and sign the guilty verdict of murder in the second degree and nothing further will be required of you as to the offense of murder [charged in Count _____ ]. If you unanimously agree that defendant is not guilty of the offense of murder in the second degree, you will have your foreman date and sign the verdict not guilty of murder in the second degree and you will determine whether defendant is guilty or not guilty of the lesser included offense of voluntary manslaughter [or said lesser included offense of involuntary manslaughter]. If you unanimously agree that defendant is guilty or not guilty of said lesser included offense of voluntary manslaughter [or said lesser included offense of involuntary manslaughter], you will have your foreman date and sign such guilty or not guilty verdict [and return it into court together with the not guilty verdict on the offense of first degree murder and second degree murder [charged in Count _____ ] [as well as any special finding you are directed to make]].

"You will note from this instruction that you must unanimously agree that the defendant is not guilty of first degree murder before you may find defendant guilty or not guilty of second degree murder. If you are unable to unanimously agree on the charge of first degree murder, your foreman shall report such fact to the court. If you are unable to unanimously agree on the charge of second degree murder, your foreman shall report such fact to the court.

"You must unanimously agree that defendant is not guilty of second degree murder before you find him guilty or not guilty of voluntary or involuntary manslaughter.

"If you unanimously agree that defendant is not guilty of the offense of first degree murder and second degree murder [charged in Count _____ ], but after due and sufficient deliberation you cannot agree that defendant is guilty or not guilty of either voluntary manslaughter or involuntary manslaughter, your foreman shall report such fact to the court and then return to the court the signed not guilty verdict of the offense of first degree murder and second degree murder [charged in Count _____ ].

"You will note from this instruction that if you unanimously agree that defendant is not guilty of the offense of first degree murder and second degree murder [charged in Count _____ ], you must have your foreman date and sign such verdicts and return them into court regardless of what may happen in your deliberations on any lesser included offense[s] of voluntary manslaughter and involuntary manslaughter."

Delivery of this instruction insures that when the jury is deadlocked, a potentially guilty defendant will not be set free.[2]

Jury deliberations in Carolyn Chaney's trial took place in 1986, four years after *Stone* and CALJIC No. 8.75. Upon hearing that the jury was deadlocked, the court, without any reference made to either *Stone* or CALJIC No. 8.75, commented that "it probably would not serve any great purpose [to continue deliberations] further." The prosecutor, who offered no legal assistance to the court regarding *Stone* and CALJIC No. 8.75, stated, "I can't in good conscience say that there is really anything else for the court to do but to declare [a mistrial] at this time." Defense counsel, when arguing the plea of once in jeopardy at a later date, claimed that at the time of deliberations he was ignorant of *Stone* and CALJIC No. 8.75.

The result: Carolyn Chaney walks. Whether that was justice is left open to debate.

It might be of some consolation that the jury in this case appears to have been divided with 10 votes for involuntary manslaughter and 2 votes for voluntary manslaughter. But the result of dismissal compelled here by *Stone* would have been the same had the jury been split 10 for first degree murder and 2 for second degree murder.

The lesson to be learned from this case is quite clear; the solution to the problem when faced by any members of the bench and bar is readily available in CALJIC. Hopefully, the majority and this concurring opinion will heighten an awareness of *Stone* and CALJIC Nos. 8.75 and 17.12 so that the unnecessary dismissal of a criminal action such as the one that occurred here will not be repeated.

---

[2] For nonhomicide cases involving uncharged lesser included offenses, the CALJIC committee created instruction No. 17.12 ("Jury May Return Partial Verdict—Non-Homicide").