[No. A097446. First Dist., Div. One. June 9, 2003.]

THE PEOPLE, Plaintiff and Appellant, v.
LARRY JOE McDOUGAL, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Appellant.

Kimiko Burton, Public Defender, and Gabriel Bassan, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**STEIN, Acting P. J.**—The People appeal from a judgment dismissing charges of murder and attempted murder against Larry Joe McDougal on

grounds of once in jeopardy. Finding legal necessity for the discharge of the jury, we reverse.

## FACTS

In the early evening of October 31, 1998, Delbert Block got into a fight with Zeid Mahjoub, who was working at a grocery store on the 900 block of Geary Boulevard in San Francisco. Mahjoub or another employee apparently forced Block out of the store. Block returned, threw a "boom box" at Mahjoub and either ran out of the store or was again forced out. This time Mahjoub followed Block out of the store and smashed the boom box against the ground. Mahjoub then turned to the bystanders that had gathered, including McDougal, asking if anyone else wanted to fight. McDougal responded by stabbing Mahjoub in the side, saying something like, "serves you right" or "that's what you get." McDougal left. Mahjoub died as a result of the wound inflicted by McDougal.

Meanwhile, a bystander, Billie Bright, saw the incident and ran across the street towards a pay telephone intending to call 911. On the way he got into an altercation with three tourists. According to Bright, one of the tourists tried to start an argument with him as he was trying to get around them to the pay phones. Bright either placed a barricade between himself and the tourists, or tried to use the barricade as a kind of weapon. At that point, McDougal appeared from around a corner. Both Bright and McDougal are African-American, while the three tourists, Bebe Bowles, Steven Dahl and Larry Dahl, are Caucasian. McDougal approached the group, telling them not to mess with Black people. He threatened each tourist with his knife, ultimately stabbing Steven Dahl. McDougal then ran away.

## PROCEDURAL HISTORY

Based on the above, McDougal was charged with the murder of Mahjoub (count I), the attempted murder of Steven Dahl (count II) and assault with a deadly weapon on the persons of Bebe Bowles and Larry Dahl (counts III and IV). McDougal entered pleas of not guilty to each charge, and in August 2000, the matter was tried to a jury.

Before the jury began their deliberations, Judge Lillian Sing provided them with verdict forms for each count, including forms for any lesser crimes included in the crimes charged. She also instructed them in accordance with CALJIC No. 8.75, that they were first to decide if McDougal was guilty of the crime charged in each count, and could determine his guilt of a lesser included crime only if they unanimously agreed that he was not guilty

of the greater crime. If they determined, unanimously, that McDougal was not guilty of the greater crime, they were to sign and return the verdict form to that effect, and then move on to the next greatest crime charged.[1] The jury returned the verdict forms as to counts III and IV—the two charges of assault with a deadly weapon—reporting that they had found McDougal guilty of each offense. As to each of these counts they also returned, unsigned, verdict forms for the lesser included offense of assault. The court polled the jury confirming that the verdicts as to counts III and IV were

---

[1] For example, as to count I, the jury was instructed:

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime of first degree murder as charged in Count One, and you unanimously so find, you may [convict] him of any lesser crime provided you're satisfied beyond a reasonable doubt that he is guilty of the lesser crime.

"You will be provided with guilty and not guilty verdict forms as to Count One, for the crime of murder. And the first degree and lesser crimes thereto. Murder in the second degree is a lesser crime to that of murder of the first degree. Voluntary and involuntary manslaughter are lesser to that of murder to [sic] the second degree.

"Thus, you are to determine whether the defendant is guilty or not guilty of murder in the first degree or any lesser crime thereto. In doing so, you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it. You may find it to be productive to consider and reach a tentative conclusion on all charged and lesser crimes before reaching any final verdict.

"Before you return any final or formal verdict, you must be guided by the following: one, that [if] you unanimously find the defendant guilty of first degree murder as to Count One, your foreperson should sign and date the corresponding guilty verdict form. All other forms as to Count One should be left unsigned.

"If you are unable to reach a unanimous verdict as to the charge in Count One of the first degree murder, do not sign any verdict forms as to that count, and report your disagreement to the court.

"The court cannot accept a verdict of guilty of second degree murder as to Count One unless the jury also unanimously finds and returns a signed verdict form of not guilty as to murder of the first degree.

"If you find the defendant not guilty of murder in the first degree, but cannot reach a unanimous agreement as to murder of the second degree, your foreperson should sign and date the not guilty of murder in the first degree form and report your disagreement to the court. Do not sign any other verdict forms.

"If you unanimously find a defendant not guilty of first degree murder, but guilty of second degree murder, your foreperson should sign and date the corresponding verdict forms. Do not sign any other verdict forms as to that count.

"The court cannot accept a verdict of guilty of voluntary or involuntary manslaughter unless the jury unanimously find[s] and returns a signed not guilty verdict form as to both murder of the first degree and murder of the second degree.

"If you unanimously find the defendant not guilty of murder in the first degree and not guilty of murder in the second degree, but are unable to unanimously agree as to the crime of voluntary or involuntary manslaughter, your foreperson should sign and date the not guilty verdict form for first and second degree and you should report the disagreement to the court.

". . . If you . . . unanimously find the defendant not guilty of murder in the first and second degree and also unanimously find the defendant not guilty of voluntary manslaughter, . . . your foreperson should sign and date the not guilty form for the first degree murder, second degree murder, and voluntary manslaughter, and you should report [any] disagreement regarding the involuntary manslaughter to the court."

unanimous. The court then ordered the jury to continue deliberations on counts I and II.

The jury later reported that it was hopelessly deadlocked six to six on count I and six to five on count II with one juror undecided. The court, finding that the jury was indeed deadlocked, declared a mistrial as to counts I and II. Defense counsel then asked the court to ask the jury if there were any acquittals on one of the greater offenses. The prosecutor asked the court to ask the jury if they had agreed that McDougal was guilty of murder, but had been unable to agree on the degree of murder. The court declined to ask either question, reminding counsel that they could ask those questions of the jurors on their own. The jury was then discharged.

The matter was set for retrial before another judge. McDougal moved to dismiss counts I and II on grounds of once in jeopardy, based on Judge Sing's failure to determine if the jury had acquitted him of the greater offenses. The prosecutor replied that defense counsel had withdrawn his request to have the jury questioned about its determinations on greater and lesser offenses. Although whether jeopardy has previously attached is ordinarily a question of law for the court, here the court felt that the merits of McDougal's motion involved issues of fact that should be decided by a jury. It therefore bifurcated the proceedings so that the jury could consider the effect of the mistrial in the prior proceedings before considering any issue of McDougal's guilt or innocence of the offenses charged in counts I and II. The jury found that defense counsel had not withdrawn his request to have the court question the jury about their verdicts. Based on that finding, the court ordered entry of judgment dismissing counts I and II, and discharged the jury.

After denying McDougal's motion for a new trial on counts III and IV, the court sentenced McDougal to four years in state prison, a sentence deemed served as a result of the credits McDougal had accrued since his arrest.

The People filed a timely notice of appeal from the final judgment of conviction.

## DISCUSSION

The People, citing *Stone v. Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809], contend that jeopardy did not attach when Judge Sing discharged the jury after they had reported themselves deadlocked on counts I and II. McDougal contends that the second judge was correct in finding that jeopardy attached when the first jury was dismissed.

He also contends that irrespective of whether he was placed in jeopardy during the first proceedings, he was placed in jeopardy during the second proceedings, and in any event, the People have waived the right to argue that jeopardy did not attach during the first proceedings.

## I.

### First Trial

■ The Fifth Amendment to the United States Constitution, and article I, section 15 of California's Constitution, prohibit placing a defendant twice in jeopardy for the same offense. "In some circumstances, double jeopardy bars a retrial even though no verdict has been rendered. Once jeopardy has attached, the discharge of the jury . . . is tantamount to an acquittal and prevents a retrial unless the defendant consented to the discharge or legal necessity required it." (*Stone v. Superior Court, supra,* 31 Cal.3d 503, 516.) Legal necessity requires the discharge of a jury when it " 'satisfactorily appears to the court that there is no reasonable probability that the jury can resolve its difference and render a verdict.' " (*Ibid.*)

■ The question here is whether the mistrial on counts I and II was the result of legal necessity; the resolution of that question turns, in part, on the reasoning and analysis of our Supreme Court in *Stone v. Superior Court, supra,* 31 Cal.3d 503. The *Stone* opinion addressed the problem of a defendant charged with an offense that includes one or more lesser offenses. The Supreme Court recognized that the jury might unanimously agree that the defendant is not guilty of the greater offense, but deadlock on the question of guilt of a lesser offense. The court noted that when the prosecutor charges different offenses in separate counts, the jury is allowed "to render a partial verdict of acquittal on a greater offense without reaching a verdict on a lesser included offense charged in a separate count." (*Id.* at p. 517.) In such a situation it is clear that the jury has, or has not, reached a verdict on the greater offense. In other cases, however, the greater and lesser offenses are not charged in separate counts. Instead, as in this case, only the greater offense is charged, but the jury is instructed on both the charged offense and any uncharged lesser included offenses. The court in *Stone* considered whether, in such circumstances, it is necessary to determine if a jury reporting itself deadlocked in fact had reached a verdict of acquittal on the greater charge, and, if so, how to make that determination. The court held that the trial court is "constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal

necessity." (*Stone v. Superior Court, supra,* 31 Cal.3d at p. 519.) Our Supreme Court then set forth alternative procedures by which a trial court might ensure that the jury has been afforded an opportunity to render a partial verdict of acquittal on a greater offense: "When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, *one appropriate course of action* would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense." (*Ibid.,* italics added.) This course of action is followed *before* the case is submitted to the jury. The Supreme Court then described a second course of action that could be taken *after* the jury returned its verdict and when the jury had not been given verdict forms as to both the greater and lesser included offenses.

"*Alternatively,* the court may decide to wait and see whether the jury is unable to reach a verdict; if it is, the court should then inquire whether the jury has been able to eliminate any offense. If the jury declares itself hopelessly deadlocked on the lesser offense yet unanimous for acquittal on the greater offense, and the court is satisfied that the jury is not merely expressing a tentative vote but has completed its deliberations, the court must formally accept a partial verdict on the greater offense." (*Stone v. Superior Court, supra,* 31 Cal.3d at pp. 519-520, italics added.)

Here, Judge Sing followed the first alternative. She provided the jury with forms for a verdict of guilty or not guilty as to each offense. She cautioned the jurors that they first were to decide whether McDougal was guilty of the greater offenses before considering the lesser included offenses, and if they were unable to agree on a greater offense, they should not return a verdict on a lesser included offense. They also were instructed that if they reached a unanimous decision that McDougal was not guilty of a greater offense, they were to sign and return a verdict form to that effect.[2] The jury here did not sign and return a verdict form reflecting that they had reached a unanimous verdict of not guilty of murder as charged in count I or of attempted murder as charged in count II. In light of the instructions given to them, the inescapable conclusion is that they were unable to reach a unanimous verdict on either charge.

McDougal, however, contends that jeopardy attached because the court did not follow the *second* procedure described in *Stone.* He asserts that the

[2]These instructions were drafted to conform with the alternatives discussed in *Stone.* (See com. to CALJIC No. 8.75 (6th ed. 1996) p. 465.)

court was required to question the jury about its verdict because defense counsel asked the court to inquire if there had been any acquittals on a greater offense. McDougal recognizes that the Supreme Court in *Stone* outlined alternative procedures, but asserts that in a later case, *People v. Marshall* (1996) 13 Cal.4th 799 [55 Cal.Rptr.2d 347, 919 P.2d 1280], the court implicitly modified *Stone* to require the trial court to follow the second alternative in any case where counsel requests that the court inquire if the jury has been able to eliminate any offense.

In *Marshall* the Supreme Court was considering an extension to the second alternative recognized in *Stone* that had been crafted by the Court of Appeal in *People v. Chaney* (1988) 202 Cal.App.3d 1109 [249 Cal.Rptr. 251]. In *Chaney*, as in *Stone* but unlike the situation here, the jury was not given separate verdict forms for the greater and lesser included offenses. Thus, the first alternative suggested in *Stone* was not in issue. After the jury announced its inability to reach a decision, the court dismissed them without inquiring whether they had been able to eliminate any offense. The appellate court considered whether the trial court's obligation to question the jury about its verdict was triggered only when there was evidence suggesting that the jury had in fact been able to eliminate an offense. The *Chaney* court found that "[t]he unmistakable import of *Stone* . . . is that evidence of an actual implied acquittal is unnecessary to take a declaration of mistrial outside the concept of legal necessity; it is enough if the trial court fails to afford the deadlocked jury with an *opportunity* to render a partial verdict of acquittal." (*People v. Chaney, supra,* 202 Cal.App.3d at p. 1122.) The Supreme Court in *Marshall*, referring to the facts in *Chaney*, rejected the conclusion reached there, holding that "[a]bsent some indication of deadlock only on an uncharged lesser included offense, the suggested procedures in *Stone* do not come into play. If the jury, in announcing apparent deadlock, gives such an indication, or if counsel so requests, the trial court, under *Stone,* should inquire further and determine whether any offenses can be eliminated." (*People v. Marshall, supra,* 13 Cal.4th at p. 826.)

Based on this language from *Marshall*, McDougal claims that the court is required to question the jury about its findings in any case where counsel asks for that procedure. In context, however, the Supreme Court was addressing the court's duties only when the second *Stone* alternative was at issue—the alternative at issue in *Chaney*—and its explanation of the trial court's responsibilities necessarily was directed at that alternative. The first alternative in *Stone* takes place before the case is submitted to the jury, long before they might announce an apparent deadlock. When the court in *Marshall* referred to *Stone*'s "suggested procedures," it was referring to procedures that come into play *after* the jury announces an apparent deadlock, the second alternative discussed in *Stone*. Where, as here, the jury has

been given verdict forms on the greater and lesser included offenses, and they have been instructed that they must return a verdict of acquittal on a greater offense if they unanimously find the defendant not guilty of the greater offense before they decide whether the defendant is guilty of the lesser included offense, the jury's failure to return any verdict form establishes that the jury *did not* acquit the defendant of the greater offense. To require the court nonetheless to question the jury further would be pointless, at least in the absence of evidence indicating some confusion on the part of the jury as to its duties. We do not read *Marshall* as adding a pointless requirement to the first alternative suggested in *Stone*.[3]

## II.

### *Second Trial*

■ Citing Penal Code section 1238, subdivision (a)(8) and *People v. Smith* (1983) 33 Cal.3d 596 [189 Cal.Rptr. 862, 659 P.2d 1152], McDougal contends that even if he was not placed in jeopardy as a result of the proceedings before Judge Sing, he was placed in jeopardy as a result of the subsequent proceedings, effectively cutting off the People's right to appeal.

■ The People's right to appeal is statutory, and appeals that do not fall within the exact statutory language are prohibited. (*People v. Drake* (1977) 19 Cal.3d 749, 754 [139 Cal.Rptr. 720, 566 P.2d 622].) Penal Code section 1238, subdivision (a)(8) allows the People to appeal from "[a]n order or judgment dismissing or otherwise terminating all or any portion of the action

---

[3]McDougal argues that we must assume that the jury in *Marshall* was instructed with CALJIC No. 8.75. We disagree. The second alternative discussed in *Stone v. Superior Court, supra,* 31 Cal.3d 503, presumes exactly the opposite, setting forth the procedure that the court should follow if it does not provide the jury with special verdict forms on greater and lesser offenses and if it does not instruct them that they must reach a verdict of not guilty of a greater offense before deciding if a defendant is guilty of a lesser included offense. Moreover, as illustrated by the situation in *People v. Chaney, supra,* 202 Cal.App.3d 1109, it is quite possible that the trial court and the attorneys were unaware of the procedures outlined in *Stone.* "Jury deliberations in Carolyn Chaney's trial took place in 1986, four years after *Stone* and CALJIC No. 8.75. Upon hearing that the jury was deadlocked, the court, without any reference made to either *Stone* or CALJIC No. 8.75, commented that 'it probably would not serve any great purpose [to continue deliberations] further.' The prosecutor, who offered no legal assistance to the court regarding *Stone* and CALJIC No. 8.75, stated, 'I can't in good conscience say that there is really anything else for the court to do but to declare [a mistrial] at this time.' Defense counsel, when arguing the plea of once in jeopardy at a later date, claimed that at the time of deliberations he was ignorant of *Stone* and CALJIC No. 8.75." (*People v. Chaney, supra,* at p. 1126 (conc. opn. of Devich, J.).) It is perfectly possible that CALJIC No. 8.75 or some like instruction was not given in *Marshall,* which was tried three years before *Chaney.* (See *People v. Marshall, supra,* 13 Cal.4th at pp. 861-862.) There is no reason to assume, from the *Marshall* court's failure to discuss the instruction, that it was in fact given.

including such an order or judgment after a verdict or finding of guilty or an order or judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." The court in *People v. Smith* considered whether an appeal by the People lies from an order sustaining a plea of former jeopardy after a mistrial has properly been declared. The court found two rationales supporting the conclusion that the People could appeal. First, the court cited California law establishing that " 'the effect of the mistrial is that jeopardy has never attached.' [Citation.] . . . '[W]here a jury is discharged for failure to reach a verdict, jeopardy does not attach because the law placed the parties back in status quo as if no trial had occurred.' " (*People v. Smith, supra,* 33 Cal.3d at p. 601, fn. omitted.) Second, the court found that the United States Supreme Court had considered a statute comparable to Penal Code section 1238, subdivision (a)(8), and had reasoned "that the 'jeopardy' mentioned in the appeal statute referred forward in time to the upcoming retrial, not back to the original trial. Thus, 'the sustaining of a motion in bar based on a plea of former jeopardy [was] appealable as long as the motion in bar was sustained prior to the impaneling of the jury in the subsequent proceeding.' " (*People v. Smith, supra,* 33 Cal.3d at p. 602, citing *United States v. Jorn* (1971) 400 U.S. 470 [91 S.Ct. 547, 27 L.Ed.2d 543].)

McDougal contends that it must be concluded that jeopardy attached once the jury was impaneled in the second proceeding, effectively cutting off the People's right to appeal. The issue raised by McDougal's plea of once in jeopardy was whether legal necessity existed for the discharge of the jury in the first proceeding. While it is true that the second trial court employed a jury to aid it in that determination, those proceedings were bifurcated and that jury was discharged before trial began on the issue of McDougal's innocence or guilt. Under the peculiar circumstances presented here, we cannot find that the act of impaneling a second jury caused jeopardy to attach. Rather, and similar to the situation in *United States v. Jorn, supra,* 400 U.S. 470, the proceedings at issue were pretrial proceedings that did not place McDougal in jeopardy.[4]

Moreover, it is settled that a defendant who seeks dismissal before the jury has rendered a verdict consents to the dismissal and by that consent waives any argument that jeopardy has attached so as to bar an appeal. (*People v. Mills* (1978) 87 Cal.App.3d 302 [151 Cal.Rptr. 71].) As it was McDougal who sought dismissal, he has waived the argument that jeopardy attached as a result of the second proceedings.

---

[4]In *Jorn,* the court heard the pretrial motion to dismiss without a jury. The nature of the proceedings, however, was the same as those that took place here, and the issues were wholly collateral to any issue of guilt or innocence. We take the holding in *Jorn* to mean that jeopardy attaches once a jury is impaneled to try the issue of guilt.

## III.

*Failure to Raise the Effect of CALJIC No. 8.75 in the Trial Court*

The People argued here, and we have found, that jeopardy did not attach in the first proceeding because Judge Sing followed the first alternative in *Stone v. Superior Court, supra,* 31 Cal.3d 503. McDougal points out that the People did not specifically argue before the second judge that the trial court followed that alternative; rather, they argued that Judge Sing had no duty to question the jury about the verdict because the jury did not provide clear evidence of a partial acquittal. McDougal contends that the People's failure to argue below that the first alternative in *Stone* was satisfied precludes them from making that argument on appeal.

■ Whether legal necessity existed for the discharge of the first jury because the first alternative in *Stone* was followed is purely a question of law. Such questions may be considered on appeal even though they were not raised in the trial court. (*People v. Carr* (1974) 43 Cal.App.3d 441, 444-445 [117 Cal.Rptr. 714].)

### Conclusion

The judgment is reversed insofar as it dismissed counts I and II. In all other respects the judgment is affirmed.

Swager, J., and Margulies, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 24, 2003.